Brett SIMONDS, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 89–101.

Supreme Court of Wyoming.

Oct. 29, 1990.

Leonard Munker, State Public Defender, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, and Theodore B. D'Arcy (argued), Student Intern, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., and Thomas Smith (argued), Student Intern, for appellee.

Before CARDINE, C.J.*, and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Justice.

Appellant Brett Simonds was sentenced to concurrent terms of imprisonment following his convictions for aggravated burglary and interference with a peace officer. In *Simonds v. State*, 762 P.2d 1189 (Wyo. 1988), he successfully challenged the aggravated burglary conviction and the life sentence imposed for that offense pursuant to Wyoming's "habitual criminal" statute, W.S. 6-10-201. This court, however, upheld his convictions with respect to the lesser-included offense of simple burglary and with respect to the charge of interference with a peace officer and remanded solely for resentencing on the burglary charge. Appellant now challenges the order of the district court on remand sentencing him to six to eight years for burglary, reducing his nine to ten year sentence for interference with a peace officer to six to eight years, and ordering those terms to be served consecutively.

Simonds was arrested while in the course of burglarizing a bar. Shortly afterwards, as the arresting officer attempted to use the establishment's telephone, Simonds struck him in the jaw. He was charged with interference with a peace officer and, due to the bodily injury inflicted on the officer, aggravated burglary. We held that the commission of the burglary had been terminated by the arrest and that Simonds' assault on the officer, therefore, took place after the burglary. Because, under the relevant statute, simple burglary is elevated to aggravated burglary only by the occurrence of aggravating circumstances "in the course of committing the crime of burglary," we also held that Simonds could not properly be convicted of aggravated burglary. Since his sentence as a habitual criminal was dependent upon

* Chief Justice at time of oral argument.

such a conviction, that sentence was improper. However, we found sufficient evidence to sustain his conviction for the crime of simple burglary and remanded for sentencing on that charge.

Appellant raises the following questions to be determined by this appeal:

"I. Did the district court have the authority to alter appellant's sentence for interference with a peace officer when the conviction was affirmed by the supreme court and the court did not specifically remand the conviction for resentencing.

"II. Did the district court judge violate appellant's constitutional right against double jeopardy when he increased appellant's sentence for interference with a peace officer by improperly changing the sentence from running concurrent to running consecutive with appellant's burglary sentence."

Appellee, State of Wyoming, would have us answer those questions in this manner:

"I. There was no increase in the sentence for interference with a peace officer and the district court acted in substantial compliance with this court's mandate in *Simonds v. State*, 762 P.2d 1189 (Wyo.1988).

"II. There was no increase in the sentence for interference with a peace officer and the district court did not violate double jeopardy principles when it sentenced appellant."

We reverse.

■ The double jeopardy provisions of the Fifth Amendment to the Constitution of the United States and Art. 1, § 11 of the Wyoming Constitution have the same meaning and are coextensive in application. *Lauthern v. State*, 769 P.2d 350, 353 (Wyo. 1989); *Vigil v. State*, 563 P.2d 1344, 1350 (Wyo.1977). Each provision affords three distinct protections to the accused. Each protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *Lauthern*, 769 P.2d at 353; *Howard v. State*, 762 P.2d 28, 31 (Wyo. 1988); *Jones v. Thomas*, — U.S. —, 109

S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). It is the third of these protections which appellant claims was denied him. He asserts that his sentence for interfering with a peace officer, originally to be served concurrently with a sentence on another charge, was unconstitutionally increased following his appeal by the subsequent order making those sentences consecutive.

In *Pearce*, the United States Supreme Court noted:

"Long-established constitutional doctrine makes clear that, beyond the requirement already discussed, the guarantee against double jeopardy imposes no restrictions upon the length of a sentence imposed upon reconviction.   * * *

"Although the rationale for this 'well-established part of our constitutional jurisprudence' has been variously verbalized, it rests ultimately upon the premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean. As to whatever punishment has actually been suffered under the first conviction, that premise is, of course, an unmitigated fiction, as we have recognized in Part I of this opinion. But, so far as the conviction itself goes, and that part of the sentence that has not yet been served, it is no more than a simple statement of fact to say that the slate *has* been wiped clean. The conviction *has* been set aside and the unexpired portion of the original sentence will never be served. A new trial may result in an acquittal. But if it does result in a conviction, we cannot say that the constitutional guarantee against double jeopardy of its own weight restricts the imposition of an otherwise lawful single punishment for the offense in question." 395 U.S. at 719–21, 89 S.Ct. at 2077–78 (emphasis in original).

The Court, however, also indicated that the imposition of a heavier sentence upon reconviction, to the extent that it may have been motivated by vindictiveness for the defendant's successful exercise of his right to appeal, does implicate due process con-

cerns. The Court observed that the threat of being penalized for the exercise of constitutional rights would deter defendants from attacking their convictions and, thus, unconstitutionally impede their open and equal access to the courts. Accordingly, the Court held:

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. **Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.** And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." 395 U.S. at 726, 89 S.Ct. at 2081 (emphasis added).

Had appellant's initial appeal been resolved by a remand for resentencing on all charges, *Pearce* would clearly control the resolution of the present appeal. Just as a remand for retrial would "wipe the slate clean" of a challenged conviction and sentence, so too would the finality of the initial sentencing be nullified by a remand for resentencing on all counts. *See United States v. Jefferson,* 714 F.2d 689 (7th Cir. 1983); *McClain v. United States,* 676 F.2d 915 (2d Cir.1982); *United States v. Busic,* 639 F.2d 940 (3d Cir.1981). The district court would clearly have been justified, within the constraints of *Pearce's* due process analysis, to change appellant's concurrent sentences so as to run consecutively. Thus, we could have decided the present case merely by determining whether the required justification for an increased sentence appeared on the record. Perhaps unfortunately, however, we did not remand the district court's original "sentencing package," in its entirety, for resentencing. Because the present case, therefore, also requires us to consider the district court's authority to augment the portion of that "package" which was undisturbed by our decision, we find that *Pearce* is not entirely

adequate to our purpose. Accordingly, we must more closely examine how the district court's sentencing authority relates to double jeopardy analysis.

In *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the Court determined that the prospect of increased punishment upon resentencing raised a double jeopardy problem only to the extent of a defendant's reasonable expectations that his original sentence had become final. 449 U.S. at 134–39, 101 S.Ct. at 435–38. With respect to those instances where a defendant initiates an appeal, as was the case in *Pearce,* it is evident that such a defendant harbors no justifiable expectation in the finality of the original sentence. In fact, his aim is for the appellate court to remove that finality, to "wipe the slate clean." To the extent the appellate court does so and authorizes the trial court to consider the matter anew, no double jeopardy violation flows from the receipt of a greater sentence following appeal. *DiFrancesco* extended this "justifiable expectation of finality" reasoning to cases where, under a federal statute granting the United States a limited right to appeal sentencing decisions, the prosecution initiated an appeal. At issue in that case were certain provisions of the Organized Crime Control Act of 1970, specifically 18 U.S.C. §§ 3575 and 3576, which contained a definition of "dangerous special offender," authorized enhanced sentencing for convicted dangerous special offenders, and granted the United States the right, under specified conditions, to have that sentence reviewed by the court of appeals. The Court noted that the prosecution's limited right of appeal did not permit a redetermination of guilt or innocence. It concluded that no double jeopardy problem was created by such an appeal because "[t]he defendant, of course, is charged with knowledge of the statute and its appeal provisions, and has no expectation of finality in his sentence **until the appeal is concluded** or the time to appeal has expired." 449 U.S. at 136, 101 S.Ct. at 437 (emphasis added).

Although *DiFrancesco* can be broadly read to stand for the proposition that no double jeopardy problem exists where a sentence has been increased after a lawful appeal by either the defendant or the prosecution, the case leaves too many questions unresolved to warrant such a reading. For instance, like *Pearce*, it says nothing about the situation arising in the present case, where the conviction and sentence on one charge was affirmed and the matter remanded with respect to only the remaining offense. One would assume that an appellate court's affirmance would engender a justifiable expectation that the sentence affirmed would become final. *DiFrancesco* suggests as much by noting that a legitimate expectation of finality arises at the conclusion of the appeal. We conclude that, with respect to matters which have not been remanded to the trial court, the appeal is concluded, and judgment and sentence finalized, by the appellate court's mandate.

Certainly, had appellant been convicted and sentenced on only one offense, affirmance would finalize the lower court's order, except to the extent that court was otherwise authorized to modify the order. In such an instance, the district court's ability to enhance a sentence differs in no significant respect from its authority to do so in those instances where no appeal has been taken. Expectations of finality are justified in both cases to the extent that statutes or procedural rules do not permit sentence enhancements. Such appears to be the implication of the Tenth Circuit's decision in *United States v. Earley*, 816 F.2d 1428 (10th Cir.1987). In that case, the court was called upon to consider, in light of *DiFrancesco*, the power of a district court to "clarify," *sua sponte*, that sentences imposed for narcotics violations were to run consecutively with a preexisting federal sentence. The court of appeals held the district court's "clarification," nearly five months after the sentence was imposed, to be in violation of double jeopardy principles. The court noted that the double jeopardy clause had been historically considered to impose constitutional limits on the time within which a district court had the power to alter a sentence. It then concluded:

"*DiFrancesco* does not abolish the concept of constitutional finality from the sentencing process, but rather emphasizes that the location of the bright line of constitutional finality in the sentencing context may vary with the varying statutory provisions granting jurisdiction to the courts.

\*  \*  \*  \*  \*  \*

"*DiFrancesco* does not disestablish double jeopardy analysis in the law of sentencing; instead *DiFrancesco* establishes an appropriate framework for its application. Unless a statute or rule extends the sentencing process further, the limit imposed by double jeopardy analysis is coterminous with the limit of the court's original sentencing authority—stopping the sentencing court's power 'at the jailhouse door.' " *Id.* at 1433–34.

*Earley* supports a conclusion that, where no appellate mandate authorizes the district court to retry a case or enhance an earlier imposed sentence and no statute or court rule otherwise provides such powers, the district court's lack of authority creates a reasonable expectation that the earlier imposed sentence is final for purposes of double jeopardy analysis. Such a conclusion is consistent with the position taken by this court in *Kaess v. State*, 748 P.2d 698, 702 (Wyo.1987) and *Turner v. State*, 624 P.2d 774, 775–76 (Wyo.1981). It is inconceivable that a different result should obtain where there is a similar lack of authorization by statute or rule of court, but where a mandate has issued affirming the earlier sentence. In both instances, no authority has been granted the district court to reconsider the sentence, and the district court would violate constitutional guarantees against double jeopardy if, in either situation, it were to increase the earlier sentence.

The double jeopardy issue in the present case, therefore, centers upon the extent to which a mandate of this court, remanding for resentencing on only one count of a multi-count conviction, empowers the district court to alter sentences

imposed on the remaining offenses. That is, can such an order be read to give the district court the authority to reconsider a sentence which we have affirmed on appeal? Our past decisions demand we answer this question in the negative. We have held that, following a remand by this court, the district court is bound to substantially comply with our mandate. Accordingly, it has the jurisdictional authority to determine only those issues expressly directed by the mandate and such previously undecided collateral questions as are necessary to reach a decision on the mandated issues. The district court is without the authority to alter its former decision with respect to matters affirmed, and thus finalized, by the mandate. *Sanders v. Gregory,* 652 P.2d 25, 26 (Wyo.1982); *Paul v. Paul,* 631 P.2d 1060, 1062–64 (Wyo.1981); *Potter v. Gilkey,* 570 P.2d 449, 454 (Wyo. 1977).

The district court could alter the term of the remanded burglary conviction, but it could not do so with respect to the sentence which was affirmed. Therefore, had the district court in the present case simply altered the *term* of appellant's burglary sentence rather than the degree of concurrence between that sentence and the sentence for interference with a peace officer, resolution of this appeal would be simple. Because the term of the burglary sentence is a feature which may be altered without changing the term of the previously affirmed sentence, and vice versa, an increase in the term of one can be analyzed for double jeopardy purposes without reference to the second. An alteration of the degree of concurrence between the two sentences, however, is a different matter. The two sentences being figuratively joined at the hip, it is impossible to work such a change on one without affecting the other.

Appellant urges us, on the one hand, to consider our previous mandate as affirming both the term of his sentence for interference with a peace officer and the degree of concurrence between that sentence and the sentence on his burglary conviction. Appellee argues to the contrary that our mandate, by remanding for resentencing on the burglary charge, implicitly gave the district court discretion to determine both the term of such a sentence and whether it would be served concurrently or consecutively with the affirmed sentence. That is, both parties suggest that the degree of concurrence between two sentences can in some manner be said to relate to only one of the sentences. The illogic of both positions prevents us from retrospectively adopting either construction of our previous mandate.

To the extent that our former decisions deny the district court the authority to enhance an affirmed sentence, and to the extent that such a change is, in a practical sense, effected by a change from concurrent to consecutive sentencing, we are unwilling to say appellant could have *no* reasonable expectation that the court was precluded from doing so. Yet, because changing those sentences to run consecutively also affected the sentence which was remanded, and because the district court was unquestionably empowered to impose that sentence, we are just as unwilling to conclude that appellant could entertain an unqualified expectation that the court could not redetermine the degree of concurrence between the two sentences. To completely bar such a redetermination because it affected both a finalized sentence and the remanded sentence would be, in effect, to bow before the illogic we have just disavowed. We therefore hold that the expectation of finality created by our mandate in appellant's first appeal is insufficient, under *DiFrancesco* and its progeny, to give rise to a double jeopardy problem in the present case. Nevertheless, we consider the expectation of finality to be sufficiently strong under the circumstances of this case so as to demand that consideration be given to the fact that a change from concurrent to consecutive sentencing has, both practically and logically, affected the previously affirmed sentence.

█ We hold it appropriate, under the facts of the present case, to deem that such an effect constitutes an increase in appellant's sentence for interference with a peace officer. Such a holding, we think, acknowledges the logical worth of the positions advanced by both appellant and the

State and pragmatically achieves a satisfactory balance between the interests of the parties. Although pursuant to that holding, appellant can raise no double jeopardy bar to making his sentences consecutive, he is entitled to challenge that "increase" in sentence under the due process analysis of *Pearce.* The district court is not precluded from changing appellant's concurrent sentences so as to run consecutively. However, it is justified in doing so only if an acceptable rationale for the change, and factual data supporting that reasoning, affirmatively appear on the resentencing record. That is, appellant's sentence may be proper in this case if the record shows objective information concerning his conduct since the original sentencing proceeding which would warrant an increase in penalty. *See Pearce,* 395 U.S. at 726, 89 S.Ct. at 2081.

Neither the order of the district court nor the transcript of the resentencing hearing on which the order was based set forth any reasons for changing appellant's sentences to run consecutively. Similarly, they reveal nothing about appellant's conduct that was not also under consideration at his original sentencing. Therefore, we are forced to conclude the district court improperly enhanced his sentence and, hereby, reverse that portion of the district court's order requiring his sentences for burglary and interference with a peace officer to be served consecutively.

We remand for resentencing on appellant's burglary conviction with instructions to the district court that, absent a record satisfying the due process dictates of *Pearce,* such a sentence must run concurrently with the six to eight-year sentence presently being served for interference with a peace officer.

URBIGKIT, C.J., filed a specially concurring opinion in which MACY, J., joined.

MACY, J., filed a specially concurring opinion.

GOLDEN, J., filed a dissenting opinion.

URBIGKIT, Chief Justice, specially concurring, with whom MACY, Justice, joins.

I agree due process was violated when the sentence affirmed by this court was later increased by the district court. Because double jeopardy was also violated, I concur only in the result.

In concurrence with the majority, I agree that due process was violated under the holding of *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). However, the double jeopardy argument advanced by the majority should also lead to the conclusion that double jeopardy *was separately* violated by the same governmental conduct. The majority first establishes that "the district court would violate constitutional guarantees against double jeopardy if, \* \* \*, it were to increase the earlier [affirmed] sentence." The majority then establishes that "[w]e hold it appropriate, \* \* \*, to deem that such an effect constitutes an increase in appellant's sentence for interference with a peace officer [which is the affirmed sentence]." Then, with no explanation, the majority claims there is no double jeopardy violation.[1] The only conclusion that could match the majority's argument is one that indicates double jeopardy *was* violated. In agreement with the logic but not the con-

---

1. The flawed particular structure of the majority's argument is:

| | |
|---|---|
| If X, then Y. | [If the court increases the earlier sentence, then double jeopardy is violated] |
| X_____ | [The court increased the earlier sentence.] |
| Therefore, not Y. | [However, there is no double jeopardy violation.] |

clusion, I would consequently hold that due process and double jeopardy were both violated.

I would also not join in the language that indicates the federal and Wyoming double jeopardy provisions must "have the same meaning and are coextensive in application." It seems ill-founded to indicate Wyoming's double jeopardy clause cannot be interpreted independently of the federal clause.

> The historical circumstances surrounding adoption of the United States Constitution are not remotely similar to the historical circumstances surrounding adoption of many states' constitutions, particularly those like Wyoming that were adopted long after the colonial era had ended. It therefore makes no sense to incorporate an interpretation attributable to the original framers of the federal Constitution into a state's own constitutional jurisprudence.

Keiter, *An Essay on Wyoming Constitutional Interpretation*, XXI Land and Water L.Rev. 527, 543 (1986).

This analysis would not reject the traditional understanding that the double jeopardy clauses in the federal Constitution and Wyoming's Constitution are assigned three protective functions—protection from subsequent prosecution for the same offense after acquittal, protection from subsequent prosecution for the same offense after conviction, and multiple punishments for the same offense. I do challenge the claim, which sprang from *Vigil v. State,* 563 P.2d 1344, 1350 (Wyo.1977), was maintained in *Lauthern v. State,* 769 P.2d 350, 353 (Wyo. 1989), and is repeated in the majority opin-

ion, that Wyoming's double jeopardy clause can be no more protective than the federal double jeopardy clause. Such a claim seems ill-founded against the backdrop of double jeopardy cases such as *Grady v. Corbin,* ―― U.S. ――, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), where the dissent was only one vote short of becoming the majority. *Grady* raises a double jeopardy bar to "subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* at 2087. Had *Grady* been decided as its dissent argued, the Wyoming Supreme Court would still be free to interpret Wyoming's double jeopardy clause to include what are now *Grady* protections so that a Wyoming prosecutor would constitutionally be barred from proceeding with a subsequent prosecution that used previously prosecuted conduct to establish an element of a new offense. Because state legislatures and state constitutions are quite free to expand the liberties of their people beyond the minimum afforded under the interpretation given the federal constitution,[2] state constitutions may improve upon federal guarantees,[3] indecisive as they may be dependent upon the times, tides, and politics ladled out by a majority of the nine in Washington, D.C. who decide how well the United States Constitution protects and guarantees. I follow Chief Justice Randall T. Shepard of the Indiana Supreme Court:

> The rights of Americans cannot be secure if they are protected only by courts or only by one court. Civil liberties pro-

---

**2.** See *Lawrence–Allison and Associates West, Inc. v. Archer,* 767 P.2d 989, 995 (Wyo.1989); *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 293, 102 S.Ct. 1070, 1077, 71 L.Ed.2d 152 (1982); *PruneYard Shopping Center v. Robins,* 447 U.S. 74, 91, 100 S.Ct. 2035, 2046, 64 L.Ed.2d 741 (1980); *Michigan v. Mosley,* 423 U.S. 96, 120, 96 S.Ct. 321, 334, 46 L.Ed.2d 313 (1975); *Oregon v. Hass,* 420 U.S. 714, 728, 95 S.Ct. 1215, 1223, 43 L.Ed.2d 570 (1975); *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972); *People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748, 768 (1978); *State v. Neil,* 457 So.2d 481, 486 (Fla.1984); Abrahamson, *Criminal Law and State Constitutions: The*

*Emergence of State Constitutional Law,* 63 Tex. L.Rev. 1141 (1985); Brennan, *State Constitutions and the Protection of Individual Rights,* 90 Harv.L.Rev. 489, 491 (1977); O'Connor, *Our Judicial Federalism,* 35 Case W.Res.L.Rev. 1, 5–6 (1984–85); O'Connor, *Trends in the Relationship Between the Federal and State Courts from the Perspective of a State Court Judge,* 22 Wm. & Mary L.Rev. 801, 804 (1981); Wright, *In Praise of State Courts: Confessions of a Federal Judge,* 11 Hastings Const.L.Q. 165, 188 (1984).

**3.** See Keiter, *supra,* XXI Land and Water L.Rev. at 543.

tected only by a U.S. Supreme Court are only as secure as the Warren Court or the Rehnquist Court wishes to make them. The protection of Americans against tyranny requires that state supreme courts and state constitutions be strong centers of authority on the rights of the people.

Shepard, *Second Wind for the Indiana Bill of Rights*, 22 Ind.L.Rev. 575, 586 (1989). Likewise see Kempkes, *Rediscovering the Iowa Constitution: The Role of the Courts Under the Silver Bullet*, 37 Drake L.Rev. 33 (1987–88). Like Chief Justice Shepard in Indiana, I am determined that the Wyoming Constitution and the Wyoming Supreme Court be strong protectors of those rights.

Finally, I cannot endorse the language of apology for our first appellate decision. I do not think it is "[p]erhaps unfortunate[ ], however, [that] we did not remand the district court's original 'sentencing package,' in its entirety, for resentencing." We affirmed that portion of the district court's sentence which was proper and remanded that which was improper. We should never apologize for exercise of our responsibility to "support, obey and defend" the Wyoming Constitution. The first article of our state constitution establishes guarantees and protections to citizens from abuse by the imperial sovereignty of state power. Rules are not only for the governed, but also those who govern.

This case should not be endorsed into the controlling state body of law to authenticate an unacceptable double jeopardy constitutional violation in the factual circumstance here presented.

MACY, Justice, specially concurring.

I concur in the majority opinion to the extent that it holds Appellant's sentence for burglary must run concurrently to his sentence for interference with a peace officer, and I join in Chief Justice Urbigkit's specially concurring opinion. I would also hold that an increase in Appellant's original sentence—on the basis of his conduct subsequent to the original sentencing—violates the Wyoming Constitution.

In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the United States Supreme Court sought to protect criminal defendants from vindictive sentencing after a retrial. As the majority opinion in this case states, the Supreme Court held:

> [W]henever a judge imposes a more severe sentence upon a defendant **after a new trial,** the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.

*Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081 (emphasis added). In *United States v. DiFrancesco*, 449 U.S. 117, 136, 101 S.Ct. 426, 437, 66 L.Ed.2d 328 (1980), the Supreme Court stated that the difference between the imposition of a sentence after a retrial and the imposition of a sentence after an appeal was no more than a " 'conceptual nicety' " (quoting *Pearce*, 395 U.S. at 722, 89 S.Ct. at 2079).

Regardless of whether this case presents a situation which falls within the purview of the dicta in *DiFrancesco*, I believe a significant difference exists between sentencing after retrial and sentencing after this Court has reversed a portion of a defendant's conviction and remanded the case to the district court for resentencing. If a defendant appeals a conviction and sentence and receives a new trial, "the slate has been wiped clean." *Pearce*, 395 U.S. at 721, 89 S.Ct. at 2078 (emphasis in original). Hence, the *Pearce* decision sought to protect defendants from vindictive sentencing after they appeal and receive new trials. It does not preclude the imposition of a greater sentence but simply states that, because the trial judge previously sentenced a defendant for conduct occurring before the date of the original sentencing, the imposition of a greater sentence must be supported by evidence of additional conduct which occurred after the pronouncement of the original sentence. When a

trial judge is directed to resentence a defendant without retrial, the judge should be placed in the same position as he was in at the time of the original pronouncement of sentence. The slate has not been "wiped clean," and it is unfair to subject a defendant to a greater sentence after he has prevailed on appeal. A contrary rule will certainly chill the right to appeal criminal convictions.

GOLDEN, Justice, dissenting.

While I agree this case must be remanded, I respectfully dissent from the court's holding. I believe that Simonds' sentence for burglary *must* run concurrently with his sentence for interfering with a police officer. The *Pearce* due process dictates are irrelevant in this instance because our remand for resentencing did not grant to the district court any authority to alter the concurrency of the sentences.

Simonds was sentenced to life imprisonment on his conviction of aggravated burglary and the finding that he was a habit-

ual criminal. He was sentenced to not less than nine years nor more than ten years on his conviction of interfering with a peace officer. These sentences were to be served concurrently. *Simonds v. State*, 762 P.2d 1189, 1191 (Wyo.1988).

On appeal, this court reversed the aggravated burglary conviction and the finding that Simonds was a habitual criminal. This court sustained Simonds' conviction as to the lesser-included offense of burglary and announced, "The case is remanded for resentencing on the crime of burglary." *Simonds*, 762 P.2d at 1193. Since this court did not remand the case for resentencing on the crime of interfering with a peace officer and the feature of concurrency, the district court on remand had no jurisdiction to change that part of Simonds' sentence.

I see no need to address the constitutional issue of double jeopardy.