2002 WY 35

Craig **JONES**, Petitioner,

v.

The **STATE** of **Wyoming**, Respondent.

No. 00–327.

Supreme Court of Wyoming.

March 1, 2002.

Mike Cornia, Evanston, WY, Representing Petitioner.

Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and T. Alan Elrod, Assistant Attorney General, Cheyenne, WY, Representing Respondent.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] The petitioner, Craig Jones, filed a Petition for Writ of Review asking this Court to address certain issues concerning his sentencing. We granted his petition and ordered that his case be remanded for resentencing. After being resentenced, Jones filed a second Petition for Writ of Review regarding the Judgment and Sentence Upon Remand, which petition was granted by this Court.

[¶ 2] We affirm, but remand for amendment of the Judgment and Sentence Upon Remand to conform to this opinion.

### ISSUES

[¶ 3] The petitioner presents the following issues for review:

ISSUE I.   Can incarceration be followed by probation?

ISSUE II.   Did the trial court impermissibly increase [the petitioner's] sentence?

ISSUE III.   Are the conditions of probation illegal?

### FACTS

[¶ 4] On November 20, 1998, a jury found the petitioner guilty of driving while under the influence (DWUI) causing serious bodily injury, in violation of Wyo. Stat. Ann. § 31–5–233(h) (Michie 1997). The county court (now referred to as circuit court) sentenced the petitioner on February 8, 1999, to twelve months in the county jail, with all but eight to nine months suspended. The circuit court ordered the petitioner to pay a $50.00 surcharge to the Crime Victims Compensation Fund, $20.00 court costs, and a $3,000.00 fine. It further ordered that the petitioner be

placed on three years' supervised probation, specifying nineteen terms and conditions to be followed.[1] On February 22, 1999, the petitioner filed a Notice of Appeal to the district court. That appeal was unsuccessful and a request for reconsideration was denied.

[¶ 5] The petitioner's first Petition for Writ of Review was filed with this Court after the district court's affirmance of his conviction and its contemporaneous denial of reconsideration. On November 30, 1999, this Court issued an Order of Partial Remand for Reconsideration of Sentence and Order Denying the Balance of the Petition for Writ of Review. We ordered that a different circuit court judge "resentence the petitioner with particular respect to the indeterminate length of the sentence originally imposed (should incarceration be ordered) and what may constitute lawful and proper terms and conditions of probation (should the assigned court consider probation)[.]"

[¶ 6] At resentencing on March 10, 2000, the circuit court ordered the petitioner to serve twelve months in the county jail with all but nine months suspended; ordered him to pay $2,771.80 to the Crime Victims Compensation Fund; $2,306.00 in restitution; $20.00 in court costs; and a $3,000.00 fine. The circuit court further ordered that the petitioner be placed on three years' supervised probation, with thirteen terms and conditions to be followed.[2] After the district court's affirmance and denial of a rehearing motion, the petitioner's second Petition for Writ of Review was filed in this Court. This Court granted review on December 19, 2000.

## CAN INCARCERATION BE FOLLOWED BY PROBATION?

[¶ 7] The question is whether the DWUI statute then in effect allowed probation following incarceration when the conviction resulted from violation of Wyo. Stat. Ann. § 31–5–233(h)(i).[3] This statute provided, in pertinent part:

Whoever causes serious bodily injury to another person resulting from the violation of this section shall be punished upon conviction as follows:

e) Reimburse the Wyoming State Public Defender's Office the amount given in an affidavit submitted....

f) Not consume or possess any alcoholic or malt beverages.

g) Not remain present in any situation where others are in possession or consuming alcoholic beverages or malt beverages.

h) Submit to a search of his person, vehicle or personal residence at the request, any time, day or night, of the probation agent.

i) Not associate with persons of a disreputable character or anyone deemed inappropriate by the probation agent.

j) Will submit to blood, breath or urinalysis test[s] at the request of the probation agent.

k) Not tamper with or attempt to alter any urine samples collected.

l) Attend counseling as deemed appropriate by the probation agent.

m) Perform five hundred (100)[sic] hours of Community Service Work Restitution to be served at the Young at Heart Senior Citizens Center within two (2) years of release from the Sweetwater County Jail.

---

1. Some of the more unusual probation conditions included: placing a ¼ page ad in the Rock Springs Rocket Miner and in the Green River Star each January apologizing to the parents and sisters of the deceased for being the instrument of his death; carrying a photograph of the deceased in the petitioner's wallet at all times; placing an 8½ by 10½ photograph of the deceased in the petitioner's cell to be visible by him throughout his incarceration; placing an ad in the local newspaper providing free designated driver services each New Year's Eve during probation to any members of the public wishing to avail themselves of this service; and constructing a cross at the location of the accident and placing a wreath at the cross on the first Sunday of each month after the petitioner's release from jail.

2. The circuit court eliminated the unusual conditions of probation and ordered the following terms and conditions of probation:
   a) Be law abiding.
   b) Obey all rules and regulations of supervised probation.
   c) Answer all questions put to him by his probation agent, any law enforcement officer, any prosecutor or the court.
   d) Will not own, possess or purchase any firearms, which includes rifles, shotguns, pistols or hand guns.

3. "[A] court has no inherent right to grant probation. The authority over sentencing comes from the legislature." *Hicklin v. State,* 535 P.2d 743, 752 (Wyo.1975).

(i) If not subject to the penalty under paragraph (ii) of this subsection, by a fine of not more than five thousand dollars ($5,000.00), imprisonment for not more than one (1) year, or both[.]

Wyo. Stat. Ann. § 31–5–233(h)(i).

[¶ 8]   It is clear that nothing in subsection (h) expressly permitted probation to follow jail time.   However, the district and circuit courts agreed that such a sentence was permissible under Wyo. Stat. Ann. § 31–5–233(e), which stated:

(e) Except as provided in subsection (h) of this section, a person convicted of violating this section is guilty of a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both.   * * * *The judge may suspend part or all of the discretionary portion of an imprisonment sentence under this subsection and place the defendant on probation on condition that the defendant pursues and completes an alcohol education or treatment program as prescribed by the judge.   Notwithstanding any other provision of law, the term of probation imposed by a judge under this section may exceed the maximum term of imprisonment established for the offense under this subsection provided the term of probation together with any extension thereof, shall in no case exceed three (3) years.*[4]

(Emphasis added.)

[¶ 9]   The   district   and   circuit courts viewed subsection (e) as the general sentencing provision of Wyo. Stat. Ann. § 31–5–233.   While their conclusion that its last sentence permitted the probationary sentence may seem reasonable, we find that the language of the statute is less than clear, so we must determine whether or not it is legally ambiguous.   If it is, we must resort to the rules of statutory construction for its interpretation.   Statutory construction or interpretation is a question of law that is reviewed *de novo.*   *Anderson Highway Signs and Supply, Inc. v. Close,* 6 P.3d 123, 124 (Wyo. 2000).

[¶ 10]   A statute is ambiguous if its intention is uncertain and it is susceptible to more than one meaning.   *Amrein v. State,* 836 P.2d 862, 864–65 (Wyo.1992).   " 'A "statute is unambiguous if its wording is such that reasonable persons are able to agree to its meaning with consistence and predictability." ' "   *Moncrief v. Wyoming State Bd. of Equalization,* 856 P.2d 440, 443 (Wyo.1993) (*quoting Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n,* 845 P.2d 1040, 1043 (Wyo.1993) and *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization,* 813 P.2d 214, 220 (Wyo.1991)).   Whether a statute is ambiguous begins with an inquiry respecting the ordinary and obvious meaning of the words employed, according to their arrangement and connection; the statute must be construed reasonably with reference to the aim, purpose, or policy of the enacting body.   *Moncrief,* 856 P.2d at 443 (*quoting Parker Land and Cattle Co.,* 845 P.2d at 1042 and *Rasmussen v. Baker,* 7 Wyo. 117, 133, 50 P. 819, 823 (1897)); *Sue Davidson, P.C. v. Naranjo,* 904 P.2d 354, 356 (Wyo. 1995).

[¶ 11]   Applying   the   above-mentioned rules of construction leads this Court to conclude that Wyo. Stat. Ann. § 31–5–233(h)(i) was ambiguous.   The petitioner construed the meaning of the term "subsection" and not "section" in the last two sentences of Wyo. Stat. Ann. § 31–5–233(e) to mean that probation was limited to sentences imposed only under subsection (e).   The State relied on the term "section" in the last sentence to argue that subsection (e) was the general sentencing provision and probation was allowed under subsections (e) or (h).   We find that this statute is subject to varying interpretations or meanings and is ambiguous.   Therefore, we will construe the meaning of the statute by looking at legislative intent

4.  Subsections (e) and (h)(i) are quoted as they existed at the time of the crime.   While these subsections have been amended, the amendments are not significant here.

and the statute's reasonable interpretation in light of its intended purpose.

[¶ 12]   It is not difficult to conclude that the legislature's intent was to permit long-term probation for DWUI offenders in order that violators could receive long-term substance abuse treatment.  Wyo. Stat. Ann. § 31–5–233(e) states in part that "[t]he judge may suspend part or all of the discretionary portion of an imprisonment sentence under this subsection and place the defendant on probation on condition that the defendant pursues and completes an alcohol education or treatment program as prescribed by the judge."  While subsection (h) does not repeat this language, it is unreasonable to think that the legislature meant long-term treatment to be available for low misdemeanor violators of subsection (e), but not for high misdemeanor violators of subsection (h).  We find that it is available for both.  This intention is reflected in the last sentence of subsection (e), wherein it is provided that extended probation may be imposed "under this *section* ...." Wyo. Stat. Ann. § 31–5–233(e) (emphasis added).  This interpretation of the statute also comports with the general rule that penal statutes are construed so as to resolve ambiguities in favor of lenity.  *Demeulenaere v. State*, 995 P.2d 132, 135 (Wyo.2000); *Meerscheidt v. State*, 931 P.2d 220, 224 (Wyo. 1997).

## DID THE CIRCUIT COURT IMPERMISSIBLY INCREASE THE PETITIONER'S SENTENCE?

### Increased Sentencing and Double Jeopardy

[¶ 13]   "[A] judgment in a criminal case will not be disturbed because of sentencing procedures unless there is a showing of an abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the sense of fair play."  *Hicklin v. State*, 535 P.2d 743, 751 (Wyo.1975).  The petitioner argues that the circuit court impermissibly

increased his sentence by ordering restitution and an increase in the amount owed to the Crime Victims Compensation Fund.  Originally, the petitioner was not ordered to pay restitution and was ordered to pay $50.00 to the Crime Victims Compensation Fund.  The resentencing judge ordered the petitioner to pay $2,306.00 as restitution and $2,771.80 to the Crime Victims Compensation Fund.  The petitioner argues that the added punishment of restitution and the increase in the amount owed to the Crime Victims Compensation Fund violates his constitutional right against double jeopardy.

[¶ 14]   The petitioner brings to our attention *Simonds v. State*, 799 P.2d 1210, 1215 (Wyo.1990), where we stated:

We have held that, following a remand by this court, the district court is bound to substantially comply with our mandate.  Accordingly, it has the jurisdictional authority to determine only those issues expressly directed by the mandate and such previously undecided collateral questions as are necessary to reach a decision on the mandated issues.  The district court is without the authority to alter its former decision with respect to matters affirmed, and thus finalized, by the mandate.

[¶ 15]   *Simonds* is distinguishable from the instant case.  In *Simonds*, we did not remand, as here, for resentencing on all issues.  The district court in *Simonds*, therefore, could not alter the terms with respect to the sentence that had been affirmed.  In *Simonds*, we remanded for resentencing on only one of two charges, but the district court changed Simonds' sentences from concurrent to consecutive terms.  *Simonds*, 799 P.2d at 1211.  We held that such a change constituted an increased sentence and violated due process.  *Id.* at 1216.  In the instant case, however, the remand gave the circuit court discretion to consider both incarceration and probation, and, in particular, to set the "lawful and proper terms and conditions of probation," which may, of course, include restitution.

[¶ 16]   In our discussion of double jeopardy in *Simonds*, we addressed a double jeop-

ardy claim made in *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *Simonds*, 799 P.2d at 1212–13. We found that had Simonds'

> initial appeal been resolved by a remand for resentencing on **all charges,** *Pearce* would clearly control the resolution of the present appeal. Just as a remand for retrial would [for double jeopardy purposes] "wipe the slate clean" of a challenged conviction and sentence, so too would the finality of the initial sentencing be nullified by a remand for resentencing on all counts.

*Simonds*, 799 P.2d at 1213 (emphasis added).

[¶ 17] The remand in the instant case was for resentencing on the single charge of DWUI resulting in serious bodily injury. Because the petitioner's entire sentencing package was remanded, we find that *Pearce* controls resolution of this issue, and we conclude that our remand was a complete reversal and vacatur of the petitioner's original circuit court sentence.

[¶ 18] In *Simonds*, we also cited *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), where the United States Supreme Court determined that there could be a double jeopardy issue when punishment was increased upon resentencing, but only to the extent of a defendant's reasonable expectations that his original sentence had become final. *Simonds*, 799 P.2d at 1213. Where a defendant has initiated an appeal, "it is evident that such a defendant harbors no justifiable expectation in the finality of the original sentence." *Id.* at 1213. The appeal and remand in the instant case "wipe[d] the slate clean" for double jeopardy purposes, leaving the circuit court free to resentence as it saw fit. *Id.*

### Due Process

[¶ 19] The petitioner next contends that even if this Court's mandate did not prohibit the resentencing court from adding monetary sanctions, due process considerations dictate that punishment not be increased. The petitioner argues that "up[ping] the ante" after a successful appeal is vindictive sentencing. "[T]he imposition of a heavier sentence upon reconviction, to the extent that it may have been motivated by vindictiveness for the defendant's successful exercise of his right to appeal, does implicate due process concerns." *Simonds*, 799 P.2d at 1212–13; *Pearce*, 395 U.S. at 726, 89 S.Ct. 2072.[5] In any event, the reasons for imposing a more severe sentence upon resentencing must be based on objective conduct of the defendant after the time of the original sentencing, which must be reflected in the record so that the legitimacy of the sentence may be reviewed on appeal. *Pearce*, 395 U.S. at 726, 89 S.Ct. 2072.

[¶ 20] At the resentencing hearing in the case now before this Court, the father of the passenger[6] injured in the automobile accident testified that his daughter had sustained a broken jaw, broken ankle and fractured hip, and that she was severely bruised and abraded as a result of the head-on collision. He further testified that she lost some of her teeth as a result of the accident, and that she now suffers from temporomandibular joint syndrome. The father testified that insurance did not cover the full cost for the orthodontia work performed on his daughter, and that he paid an additional $2,306.00 for her treatment.

[¶ 21] The transcript of the resentencing hearing indicates that the petitioner agreed with the restitution ordered by the circuit court. The petitioner's attorney stated, "I leaned over to Mr. Jones after the presentation of the restitution evidence and he informed me that he's got no problem with it. If you want to make that a condition of probation ok." We find that this consent manifested by the petitioner's own statement

---

5. The "presumption of vindictiveness" recognized in *Pearce* has been limited to cases where there is a "reasonable likelihood" that actual vindictiveness was present. *Alabama v. Smith*, 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

6. The accident involved a head-on collision between the petitioner's car and an oncoming car. The driver of the oncoming car was killed and a passenger was seriously injured.

is sufficient objective conduct occurring after the original sentencing to justify inclusion of the restitution and Crime Victims Compensation Fund payment conditions.[7]

### Restitution

[¶ 22] The petitioner next argues that the passenger is not entitled to restitution because she did not receive "serious bodily injury" as defined by Wyo. Stat. Ann. § 31–5–233(h).[8] Reliance on subsection (h) is misplaced, however, because that subsection deals with punishment for a DWUI conviction, not with victim restitution.[9]

[¶ 23] The restitution statutes are found in Wyo. Stat. Ann. §§ 7–9–101 through 7–9–115 (Lexis 1999). In order to be entitled to restitution, a person need not have serious bodily injury as defined in Wyo. Stat. Ann. § 31–5–233(h), but must meet the definition of "victim" found in Wyo. Stat. Ann. § 7–9–101(a)(v).[10] The passenger is entitled to restitution pursuant to Wyo. Stat. Ann. § 7–9–102, which states that "[i]n addition to any other punishment prescribed by law the court shall, upon conviction for any misdemeanor or felony, order a defendant to pay restitution to *each victim* as determined under W.S. 7–9–103 and 7–9–114...." (Emphasis added.) The passenger had pecuniary damages in the amount of $2,306.00, and the record is clear that the petitioner's criminal activity caused the passenger's injuries, making the passenger a victim under Wyo. Stat.

Ann. § 7–9–101(a)(v). We conclude that the passenger had sufficient grounds for seeking restitution pursuant to Wyo. Stat. Ann. § 7–9–102.

[¶ 24] The petitioner next cites to *Shongutsie v. State*, 827 P.2d 361, 369 (Wyo.1992), where this Court stated, " § 7–9–103 specifically requires that the trial judge find 'ability to pay' or 'reasonable probability' of ability to pay prior to requiring restitution," arguing that the resentencing court made no such determination. *Shongutsie* required that a specific finding of the ability to pay be made on the record. *Shongutsie*, 827 P.2d at 369.

[¶ 25] The applicable statute when the petitioner was resentenced regarding the determination of the amount of restitution owed and the ability to pay was Wyo. Stat. Ann. § 7–9–103(a). This statute read the same, in pertinent part, in 1992 when we decided *Shongutsie:* "The court shall require restitution by a defendant if it determines or finds that the defendant has or will have an ability to pay or that a reasonable probability exists that the defendant will have an ability to pay." Our holding in *Shongutsie* was later adopted in *Leach v. State*, 836 P.2d 336, 340 (Wyo.1992). We re-examined these holdings in *Murray v. State*, 855 P.2d 350, 358–59 (Wyo.1993), *cert. denied*, 510 U.S. 1045, 114 S.Ct. 693, 126 L.Ed.2d 660 (1994), where we concluded that the first sentence of Wyo. Stat. Ann. § 7–9–103(a) was inconsistent with the language of Wyo. Stat. Ann. § 7–9–102,

---

7. Because this was full resentencing, rather than a remand to give the State a second chance to prove restitution, it does not violate the petitioner's double jeopardy rights. *Van Riper v. State*, 999 P.2d 646, 648 (Wyo.2000); *Renfro v. State*, 785 P.2d 491, 493 (Wyo.1990); *Kaess v. State*, 748 P.2d 698, 702 (Wyo.1987).

8. Wyo. Stat. Ann. § 31–5–233(h) states that " 'serious bodily injury' means bodily injury which creates a reasonable likelihood of death or which causes miscarriage or serious permanent disfigurement or protracted loss or impairment of any bodily member or organ."

9. "Whoever causes serious bodily injury to another person resulting from the violation of this section shall be *punished* ... as follows:...." Wyo. Stat. Ann. § 31–5–233(h) (emphasis added).

10. While the Information named only the deceased as a victim, the restitution statutes allow for other victims, such as the passenger, to receive restitution. "[T]he court shall fix a reasonable amount as restitution owed to each victim for actual pecuniary damage resulting from the defendant's criminal activity...." Wyo. Stat. Ann. § 7–9–103(a). " 'Victim' means a person who has suffered pecuniary damage as a result of a defendant's criminal activities." Wyo. Stat. Ann. § 7–9–101(a)(v). " 'Criminal activity' means any crime for which there is a plea of guilty, nolo contendere or verdict of guilty upon which a judgment of conviction may be rendered and includes any other crime which is admitted by the defendant, whether or not prosecuted." Wyo. Stat. Ann. § 7–9–101(a)(i).

which clearly states that a specific finding must be made on the record only if the court finds the defendant ***does not*** have the ability to pay.[11]

[¶ 26] The effect of *Murray* is that a silent record, that is, one containing neither a finding of ability to pay nor a finding of inability to pay, supports an order requiring the payment of restitution. That is the nature of the record in the instant case. The resentencing court made no finding as to either the petitioner's ability or inability to make present or future restitution payments. However, the record contains facts from which the ability to pay can be inferred. In the absence of a finding of inability to pay supported by the record, the resentencing court was required by Wyo. Stat. Ann. § 7-9-102 to order restitution.

[¶ 27] Finally, the petitioner contends that the passenger will be allowed double recovery if he is required to pay $2,771.80 to the Crime Victims Compensation Fund. The petitioner states that "[t]he restitution statutes do not allow double recovery," but fails to cite any statutory authority supporting this contention.

[¶ 28] Factors courts consider when deciding upon a plan for restitution are found in Wyo. Stat. Ann. § 7-9-106. One of the factors to be considered is "[w]hether compensation has been paid to any victim under the Crime Victims Compensation Act [§§ 1-40-101 through 1-40-119][.]" Wyo. Stat. Ann. § 7-9-106(a)(iv). The resentencing judge properly took this factor into account. The State had documentation from the Victim's Compensation Division that it introduced into evidence at the resentencing hearing. The passenger's father testified that his daughter received $2,721.80 from the Crime Victims

Compensation Fund, and that his insurance did not reimburse him in the amount of $2,306.00 for dental treatment. Based on the evidence, the resentencing judge ordered the petitioner to pay $2,771.80 ($2,721.80 plus $50.00 required pursuant to Wyo. Stat. Ann. § 1-40-119(a) (Michie 1997)[12]) to the Crime Victims Compensation Fund, and to pay $2,306.00 in restitution. The resentencing judge had documentation from which to determine what treatment was covered by the Crime Victims Compensation Fund. We can infer from the record that when the resentencing judge also ordered restitution, he took into account what the Crime Victims Compensation Fund had already paid, and what it was for.

[¶ 29] "The victim or his dependent is entitled to compensation under this act [§§ 1-40-101 through 1-40-119] if: (i) The victim suffered personal injury as a result of a criminal act[.]" Wyo. Stat. Ann. § 1-40-106(a)(i) (Michie 1997). We have established that the passenger suffered personal injury resulting from the petitioner's criminal act, and was entitled to compensation from the Crime Victims Compensation Fund.

[¶ 30] Recovery by the State from the offender is found in Wyo. Stat. Ann. § 1-40-112(a) (Michie 1997):

If an order for the payment of compensation for personal injury or death is made under this act . . . the state, upon payment of the amount of the order, shall be subrogated to any right of action the victim or dependent of the victim has against the person or persons responsible for the injury or death, and the state may bring an action against the responsible person for the amount of damages the applicant sustained.

The record indicates that the State paid the victim $2,721.80, and we conclude that the

---

11. Wyo. Stat. Ann. § 7-9-102 states:
    In addition to any other punishment prescribed by law the court shall, upon conviction for any misdemeanor or felony, order a defendant to pay restitution to each victim as determined under W.S. 7-9-103 and 7-9-114 unless the court specifically finds that the defendant has no ability to pay and that no reasonable

probability exists that the defendant will have an ability to pay.

12. "[A] defendant who . . . is convicted of . . . the following criminal offenses [Wyo. Stat. Ann. § 31-5-233] shall be assessed a surcharge of not less than fifty dollars ($50.00)[.]" Wyo. Stat. Ann. § 1-40-119(a) and (a)(ii).

resentencing court was correct in ordering this amount (plus the additional $50.00) to be paid to the Crime Victims Compensation Fund.

[¶ 31] For the foregoing reasons, we find that the resentencing court did not err when it ordered that restitution be paid in addition to the amount paid to the Crime Victims Compensation Fund.

## ARE THE CONDITIONS OF PROBATION ILLEGAL?

[¶ 32] In his final issue, the petitioner challenges the constitutionality of two of the conditions of his probation:

h) Submit to a search of his person, vehicle or personal residence at the request, any time, day or night, of the probation agent.

i) Not associate with persons of a disreputable character or anyone deemed inappropriate by the probation agent.

[¶ 33] The Fourth Amendment to the United States Constitution protects people from unreasonable government intrusions into their legitimate expectations of privacy. *King v. State*, 780 P.2d 943, 959 (Wyo.1989).[13] This protection is violated when a search or seizure is unreasonable. *Saldana v. State*, 846 P.2d 604, 610 (Wyo. 1993). In that regard, we have previously held that, while probationers and parolees are entitled to this Fourth Amendment protection, "neither probationers nor parolees enjoy ' " 'the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special [probation] restrictions.' " ' " *Nixon v. State*, 2001 WY 15, ¶ 11, 18 P.3d 631, 635 (Wyo.2001) (*quoting Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 3169, 97 L.Ed.2d 709 (1987) and *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). More specifically, "a warrant based upon probable cause is not generally required before a parole officer may conduct a search to determine whether the parolee is violating the terms of his parole." *Pena v. State*, 792 P.2d 1352, 1357 (Wyo.1990).[14]

[¶ 34] In both *Nixon* and *Pena*, we followed the lead of the United States Supreme Court in holding that a warrantless search of a probationer or parolee, without probable cause, does not violate the Fourth Amendment so long as "reasonable grounds" or "reasonable suspicion" for such a search exists. *Nixon*, 2001 WY 15, ¶¶ 12–13, 18 P.3d at 635–36; *Pena*, 792 P.2d at 1357 n.10; *Griffin*, 483 U.S. at 873, 107 S.Ct. 3164. " 'Reasonable suspicion (which is a less stringent standard than probable cause) requires that the parole officer "be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant a belief * * * that a condition of parole has been or is being violated." ' " *Nixon*, 2001 WY 15, ¶ 12, 18 P.3d at 636 (*quoting Pena*, 792 P.2d at 1356–58 and *State v. Johnson*, 748 P.2d 1069, 1072 (Utah 1987)).

[¶ 35] It is necessary in the instant case to go beyond the reach of *Nixon* and *Pena*. The search in *Nixon* followed the observance of certain contraband items by probation agents during a routine home visit. *Nixon*, 2001 WY 15, ¶ 4, 18 P.3d at 633. The search in *Pena* followed an informant's tip that Pena possessed contraband. *Pena*, 792 P.2d at 1354. In the present case, no search has yet taken place; rather, the Court is asked to determine the legality of a probationary condition that allows searches at any time upon the request of a probation agent.

[¶ 36] While "[s]entencing judges have wide discretion in determining appropriate conditions of probation," and while those "conditions ... can be challenged

13. Similar protection is provided by Wyo. Const. art. 1, § 4, but the petitioner has not pursued an independent state constitutional analysis of the issue.

14. We discern no distinction between parolees and probationers for purposes of this discussion; but for their conditional release, both would be incarcerated.

only upon a showing that the trial judge exceeded his authority or abused his discretion," probation conditions must be reasonably related to rehabilitation, to the criminal conduct for which the probationer was convicted, and to the deterrence of future criminal conduct. *Lansing v. State*, 669 P.2d 923, 927–28 (Wyo.1983). *See also Leyba v. State*, 882 P.2d 863, 865 (Wyo.1994). It is only because the state has a "special need" to ensure probation restrictions are observed that probation conditions may include warrantless searches based on something less than probable cause. *Griffin*, 483 U.S. at 875, 107 S.Ct. 3164. Determination of the reasonableness of such a provision requires a balancing of the interests of the state and the privacy interests of the probationer. *New Jersey v. T.L.O.*, 469 U.S. 325, 351, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (Blackmun, J., concurring).

[¶ 37] Saying that probationers have a diminished expectation of privacy and that the state has a special interest in operating its probation system does not, of course, end the inquiry. In imposing reasonable probation conditions, the sentencing judge must, on a case-by-case basis, take into consideration " 'the nature and circumstances of the offense and the history and characteristics of the defendant.' " *United States v. White*, 244 F.3d 1199, 1208 (10th Cir.2001) (*quoting* 18 U.S.C. § 3553(a)(1)); *see also* 4 Wayne R. LaFave, *Search and Seizure*, § 10.10(c) and (d) at 772–85 (1996). It follows that, to meet the standards cited from *Leyba* and *Lansing*, the probationary conditions must be tailored to the particular circumstances of the particular defendant and the particular case.

[¶ 38] The condition in the instant case allowing a search at any time, unlimited in scope, is not reasonable because the record does not show that the balance has been tipped in favor of such a governmental intrusion on even the diminished expectation of privacy enjoyed by the petitioner. However, the condition could be limited so as to be reasonable under the " 'nature and circum-

stances of the offense and the history and characteristics' " of the petitioner. *White*, 244 F.3d at 1208 (*quoting* 18 U.S.C. § 3553(a)(1)). The petitioner was convicted of DWUI causing serious bodily injury. One victim died as a result of the petitioner's conduct. The consumption of alcohol obviously was a factor in the crime. Under these circumstances, a condition that the petitioner submit to random searches for the presence of alcohol is reasonable because it is necessary for the State to accomplish the purposes of probation.

[¶ 39] We hold that, in cases where the unlawful possession, consumption, or abuse of alcohol or a controlled substance was an element or contributing factor in the underlying crime, or where the evidence at sentencing suggests that the unlawful possession, consumption, or abuse of alcohol or a controlled substance will likely affect a defendant's rehabilitation and the prospect of future criminal conduct, reasonable grounds exist to include as a probationary condition random searches of the defendant, his residence, and his vehicle for the presence of the offending substances. In cases where the alcohol or controlled substance factor is not an element of the charged crime, but depends upon the evidence adduced at sentencing, the sentencing judge must ensure that the record supports the imposition of such a condition.

[¶ 40] We will remand with instructions that the Judgment and Sentence Upon Remand be amended so as to tailor narrowly probationary condition "h" to conform to this opinion.

### Persons of Disreputable Character

[¶ 41] Probationary condition "i" required that the petitioner "[n]ot associate with persons of a disreputable character or anyone deemed inappropriate by the probation agent." The petitioner does not specify in his brief the legal right he feels is being impinged by this condition, stating only that "probation conditions which restrict constitutional rights merit 'special scrutiny,' " *citing*

*United States v. Consuelo–Gonzalez*, 521. F.2d 259, 265 (9th Cir.1975). The petitioner does, however, also cite to *United States v. Lawson*, 670 F.2d 923, 924–30 (10th Cir.1982) and *United States v. Smith*, 618 F.2d 280, 282 (5th Cir.), *cert. denied*, 449 U.S. 868, 101 S.Ct. 203, 66 L.Ed.2d 87 (1980), both of which involved challenges to similar probation conditions that were alleged to violate the petitioners' freedom of association guaranteed under the First Amendment to the United States Constitution. It is assumed that this is the basis of this petitioner's argument.[15]

[¶ 42] It has long been recognized that criminal activity may be fostered by an offender's association with certain individuals who encourage criminality. They may serve as co-criminals or teachers or they may urge the offender to violate the law. 1 Neil P. Cohen, *The Law of Probation and Parole*, §§ 9:15–9:19 (2nd ed.1999). It has also been recognized that if individuals have been or could be possible victims of crime, they may provoke an offender into committing the crime of which the individual was a victim or potential victim.[16] Courts have often conditioned a defendant's probation on not associating with a victim, the victim's family, or those that have been targets of violent acts by the defendant.[17] As long as the condition

limiting the defendant's freedom of association is designed to further the ends of rehabilitation or to protect the public, the condition has generally been upheld.[18]

[¶ 43] "[R]estriction of the right of association is part of the nature of the criminal process." *People v. Robinson*, 199 Cal.App.3d 816, 245 Cal.Rptr. 50, 51 (1988). Courts in other jurisdictions have upheld the constitutionality of similar conditions on their grants of probation or parole. *United States v. Furukawa*, 596 F.2d 921, 922–23 (9th Cir. 1979); *Birzon v. King*, 469 F.2d 1241, 1242–43 (2nd Cir.1972). Therefore, "freedom of association may be restricted if reasonably necessary to accomplish the essential needs of the state. . . ." *Malone v. United States*, 502 F.2d 554, 556 (9th Cir.1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975).

[¶ 44] Where a defendant is convicted of a DWUI causing serious bodily injury resulting in death, a probation condition limiting the defendant from associating with people who drink or who use controlled substances may be valid. However, it is for the sentencing court to specify the type of individuals or specific individuals in its judgment and sentence in order to make clear to the defendant

15. Analysis of this issue could be more precise if the petitioner's position was more adequately detailed. There are at least five separate theories upon which similar challenges have been based: vagueness, lack of relation to sentencing purposes, freedom of association, the right of privacy, and substantive due process. 1 Neil P. Cohen, *The Law of Probation and Parole*, §§ 9:15–9:19 (2nd ed.1999).

16. *See* 1 Neil P. Cohen, *supra*, at §§ 9:15–9:19. *See also State v. Pease*, 233 Mont. 65, 758 P.2d 764, 768 (1988), *cert. denied*, 488 U.S. 1033, 109 S.Ct. 845, 102 L.Ed.2d 976 (1989) (the probationer was not allowed any contact with the victim and the court held that probationer would be in violation of his probation even if it was the victim that made contact); *State v. Moses*, 159 Vt. 294, 618 A.2d 478, 480 (1992) (probation condition that the defendant not associate with any individual the probation agent found to be improper was found to be an acceptable probation condition and within reasonable discretion of the trial court); and ABA Standards for Criminal Justice, *Sentencing*, § 18–3.13(d)(vii) (3d ed.1994) (the American Bar Association Stan-

dard for Criminal Justice authorizes conditions that limit a probationer from "consorting with specified groups of people.").

17. *See Mathews v. State*, 234 Ga.App. 111, 506 S.E.2d 225, 225–26 (1998) (special probation condition barring defendant who pled guilty to rape from contacting or associating with rape victim did not violate his First Amendment right to freedom of association even though victim was the defendant's common law wife and the mother of his two children).

18. *See* 1 Neil P. Cohen, *supra*, at §§ 9:15–9:19. *See also United States v. Bee*, 162 F.3d 1232, 1235 (9th Cir.1998), *cert. denied*, 526 U.S. 1093, 119 S.Ct. 1509, 143 L.Ed.2d 661 (1999) (probation condition did not allow defendant to be in contact with minors after being convicted of sexual abuse of a minor) and *United States v. Turner*, 44 F.3d 900, 903 (10th Cir.), *cert. denied*, 515 U.S. 1104, 115 S.Ct. 2250, 132 L.Ed.2d 258 (1995).

with whom he may not associate. It is also necessary for the sentencing court to indicate how this will further the ends of rehabilitation, protect the public, or is necessary to accomplish essential needs of the state.

[¶ 45] We remand with instructions that the Judgment and Sentence Upon Remand be amended to conform to this opinion.[19]

[¶ 46] Finally, we will correct a discrepancy found in the Judgment and Sentence Upon Remand. The condition in error states that the petitioner "[p]erform five hundred (100) hours of Community Service Work...." We have stated that " 'an orally pronounced sentence controls over a judgment and commitment order when the two conflict.' " *Christensen v. State*, 854 P.2d 675, 678 (Wyo.1993) (*quoting United States v. Villano*, 816 F.2d 1448, 1450 (10th Cir. 1987)). The trial record is clear that the circuit court sentenced the petitioner to 100 hours of community service rather than 500 hours.

## CONCLUSION

[¶ 47] The Judgment and Sentence Upon Remand is affirmed, but we remand for amendment to conform probation conditions (h) and (i) to this opinion. In addition, the number of hours of community service to be served shall be corrected to 100.

GOLDEN, Justice, dissenting.

[¶ 48] I respectfully dissent from the majority's resolution of the first issue in this appeal regarding whether incarceration can be followed by probation. The majority opinion has taken the probation provisions contained in subsection (e) and grafted them into subsection (h). This violates fundamental rules of statutory construction.

[¶ 49] Structurally, subsections (e) and (h) are independent subsections of Wyo. Stat. Ann. § 31–5–233. They are of equal dignity.

A sentencing provision in subsection (e) cannot apply to subsection (h) unless expressly provided. There simply is no express provision allowing the probation provisions of subsection (e) to apply to sentencing under subsection (h). In fact, subsection (e) begins with the phrase "[e]xcept as provided in subsection (h) of this section." This clearly indicates that the two subsections are mutually exclusive and that provisions of subsection (h) override any provisions in subsection (e). Further, the sentence allowing for probation in subsection (e) states: "[t]he judge may suspend part or all of the discretionary portion of an imprisonment sentence **under this subsection** and place the defendant on probation on condition that the defendant pursues and completes an alcohol education or treatment program as prescribed by the judge." (emphasis added) The statutory language is clear that the probation provision applies only to a sentence under subsection (e).

[¶ 50] The majority opinion reaches its conclusion by creating an ambiguity where none exists. Even if an ambiguity did exist, the rule of lenity in construing criminal statutes would lead to the result opposite of that reached by the majority opinion. As written, subsection (h) allows for a maximum jail sentence of one year (and/or a fine). By grafting the probation provisions of subsection (e) into subsection (h), the penalty is extended beyond the one-year jail term to also potentially include an additional three years probation. This interpretation certainly does not favor a person convicted under subsection (h).

[¶ 51] It is well-established that "[t]he authority to prescribe punishment for criminal offenses is vested in the legislative department of state government, and courts can impose only those sentences which the legislature has authorized." *Keller v. State*, 771 P.2d 379, 386 (Wyo.1989). A corollary of this (as the majority opinion points out in footnote 3) is that a court has no inherent right

---

**19.** This holding does not affect plea agreements whereby the accused and the prosecutor in a criminal case can mutually agree to a particular condition of probation, subject to the approval by the sentencing court.

to grant probation. A plain reading of the statutory language at issue in this appeal reveals that subsection (h) contains no corollary to the potential three-year probation provisions of subsection (e). "Our rule with respect to penal statutes is that they must be strictly construed and cannot be enlarged by implication or extended by inference or construction." *Smith v. State*, 902 P.2d 1271, 1284 (Wyo.1995). Subsection (h) does not contain any specific provision for the imposition of a maximum three-year term of probation. This Court cannot add such language into the subsection under the guise of statutory interpretation. There simply is no statutory authority for imposing a term of three years probation on someone convicted under subsection (h).