**Domingo PENA, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 89–123.**

Supreme Court of Wyoming.

May 23, 1990.

Rehearing Denied June 22, 1990.

Public Defender Program: Steven E. Weerts, and Mike Cornia, Sr. Asst. Public Defenders, and Donald K. Slaughter, Student Intern, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Mary B. Guthrie, Sr. Asst. Atty. Gen., Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

In the summer of 1988, the Wyoming Southeast Drug Enforcement Team, through informants and controlled buys, linked Pena to the sale of cocaine. The investigation culminated in a large quantity of cocaine being seized in an August 5, 1988 search of Pena's home. A jury found Pena guilty of 1) conspiracy to deliver cocaine; 2) delivery of cocaine; and 3) possession with intent to deliver cocaine. Pena, who was on parole for a previous drug conviction, received three concurrent sentences of six to eight years. Pena appeals his conviction and asserts that:

1. [T]he trial court erred in allowing Loretta Valdez to testify.
2. [T]he trial court erred in allowing the prosecution to utilize leading questions.
3. [T]he trial court erred in allowing irrelevant testimony about the perceived value of Appellant's boots.
4. [T]he trial court erred in allowing the prosecution to imply that Appellant had the burden to prove his innocence.
5. [T]he trial court judge improperly instructed the jury about Ms. Anglum's [sic] status as an alleged accomplice.

6. [T]he trial court judge should have recused himself since his impartiality could be reasonably questioned.
7. [T]he trial court erred in allowing evidence that had been obtained without a search warrant.
8. [The] cumulative error at trial warrants a reversal of Appellant's convictions.

The state, responding to the issues Pena asserts, frames them in a slightly different manner.

We affirm.

## DISCUSSION

 Pena claims that the trial court erred when it allowed into evidence the testimony of a Ms. Valdez. She testified that she overheard a conservation in which Pena attempted to recruit her husband into the drug trade. Pena objected to the testimony on several evidentiary grounds. The trial court overruled the objections. On appeal, it is Pena who must demonstrate that the trial court's decision to admit Valdez's testimony constituted a clear abuse of discretion. *Velos v. State*, 752 P.2d 411, 414 (Wyo.1988).

It was Pena's own statements which were offered against him as evidence of his intent to deliver cocaine.[1] The adversarial nature of our justice system provides the justification for permitting a party's own statement to later be used against him.[2] Pena had the right to explain, deny, or rebut the statements attributed to him by Valdez.

Pena's statements are also admissible under W.R.E. 404(b) as evidence directed at an "element of the charged offense * * * [which] is a material issue in the case." *Pena v. State*, 780 P.2d 316, 318 (Wyo. 1989). One of the counts with which Pena was charged was possession with intent to deliver. Because intent is an essential element of the charge,[3] evidence which would

---

1. See W.R.E. 801(d)(2)(A), "Admission by Party–Opponent." A statement is not hearsay, if the statement is offered against a party and is his own statement. See *U.S. v. Porter*, 544 F.2d 936, 938 n. 1 (8th Cir.1976).

2. See *McCormick on Evidence* § 262, at 775 (E. Cleary, 3d ed. 1984).

3. See *Stuebgen v. State*, 548 P.2d 870, 879 (Wyo. 1976).

tend to reveal the nature of Pena's intent vis-a-vis the delivery of cocaine is relevant. In *Noetzelmann v. State*, 721 P.2d 579, 582 (Wyo.1986), this court stated that "evidence of prior involvement in drug trafficking" is admissible under W.R.E. 404(b)[4] as proof of intent. Pena's attempt to entice another individual into the drug trade is relevant evidence[5] of Pena's intent to traffic in cocaine.

■ Pena also claims that Valdez's testimony would lead the jury to believe that Pena was a dealer. Pena claims, therefore, that the testimony was unfairly prejudicial, and inadmissible under W.R.E. 403, because it inflamed the passions of the jury and confused the issues.[6] We stated in *Pena*, 780 P.2d at 323, that "The fact that the evidence is detrimental to the defendant is neutral. For the prejudice factor to come into play the [trial] court must conclude that it is unfair." Valdez's testimony was undoubtedly prejudicial; however, Pena has not demonstrated its unfairness. Unsupported allegations that the evidence is unfairly prejudicial and should be barred are not enough. Pena believes that Valdez "had reasons for testifying other than justice: she worked for the Attorney General's office and she was jealous of the time her husband spent with [Pena]." Cross-examination is the appropriate means to expose witnesses who mingle fiction with fact or whose testimony is driven by ulterior motives. Pena had the right, which he exercised, to cross-examine Valdez. We find that Pena has not demonstrated how the trial court abused its discretion when it permitted Valdez to testify.

■ Pena next claims that the trial court erred when it allowed the prosecutor to use a leading question during direct examination of Anglim, who had entered into a plea agreement with the state. On direct, the state asked the witness if she was confused about the dates on which she had purchased cocaine from Pena. In phrasing the question, the state suggested alternative dates. Pena objected to the question as leading; the trial court overruled the objection.

Pena's argument that it was "impermissible" for the state to ask Anglim a leading question only gets him halfway. Whether a question is leading and, if so, whether it is permissible both involve the trial court's judgment and will not be disturbed absent an abuse of discretion. *Debaca v. State*, 404 P.2d 738, 739 (Wyo.1965). Leading questions are not, per se, impermissible. W.R.E. 611(c) states "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." The court in *United States v. DeFiore*, 720 F.2d 757, 764 (2nd Cir.1983) *cert. denied*, 467 U.S. 1241, 104 S.Ct. 3511, 82 L.Ed.2d 820 (1984), noted that Rule 611(c) contains "words of suggestion, not command." In other words, the rule grants the trial court broad discretion on whether or not to allow leading questions.

In *United States v. Hewes*, 729 F.2d 1302, 1325 (11th Cir.1984), *cert. denied sub nom., Caldwell v. United States*, 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985), the Court said that F.R.E. 611(c) is not a bar to either side's occasional use of leading questions during direct. Pena has not established that the trial court's decision to allow the leading question was an abuse of discretion.

---

4. W.R.E. 404(b) states that
 [e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

5. W.R.E. 401 states: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

6. W.R.E. 403 states that
 [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

■ Pena next contends that the trial court erred when it allowed a parole officer to testify, over the defendant's relevancy objection, that the defendant had "expensive" cowboy boots in his closet. The state's case against Pena, however, did not turn on the price of his cowboy boots. (Anglim's testimony that Pena had sold her cocaine was slightly more damaging). Consequently, we find the parole officer's testimony to be harmless. *Justice v. State*, 775 P.2d 1002, 1010–11 (Wyo.1989).

■ Pena alleges that the trial court erred when it allowed the state during redirect to ask its witness, a state crime lab employee, whether the public defender had requested "purity" tests on the cocaine. Pena claims the question implied that it was the defendant's burden to prove his innocence, which allowed the state to shift the burden of proof. In overruling Pena's objection, the trial court noted that it was Pena who raised on cross-examination the issue whether additional tests had been performed on the cocaine. The trial court ruled that on redirect the state was permitted to point out that Pena also had the right to request the additional tests. The purpose of redirect is to respond to questions posed to the witness during cross-examination. *Sanville v. State*, 593 P.2d 1340, 1344 (Wyo.1979). We believe, therefore, that the trial court's ruling was correct.

■ Pena claims that the trial court improperly instructed the jury on what weight to give to the accomplice Anglim's testimony. The instruction Pena proposed used the term alleged accomplice throughout, rather than simply accomplice. The trial court refused Pena's instruction because it believed that the pattern instruction on accomplice testimony correctly stated the law. On appeal Pena argues that the instruction given failed to properly stress the difference between accomplice and alleged accomplice, which might lead the jury to believe that the defendant had

already been found guilty. We disagree. The pattern instruction states that an accomplice's testimony "is always to be received with caution and weighed with great care. You should never convict a defendant upon the unsupported testimony of an alleged accomplice, unless you believe that unsupported testimony beyond a reasonable doubt." We find no material difference between the instruction Pena proposed and the pattern instruction given. The pattern instruction accurately stated the law. *Sodergren v. State*, 715 P.2d 170, 181 (Wyo.1986).

Pena makes the unsupported allegation that the trial judge was biased and should have recused himself. Pena made no attempt, however, to follow the correct procedure to challenge the judge. *See* W.R. Cr.P. 23(e). On appeal Pena urges this court to find that the trial court was biased; he does this without providing affidavits as required by Rule 23(e). We decline the invitation.

■ Pena alleges that the trial court erred when it allowed into evidence the cocaine which had been seized without a search warrant. The parole office received an anonymous tip that Pena was in possession of cocaine. Acting on the tip, four parole officers went to Pena's house on August 5, 1988, and told Pena of their plans to conduct a search (a narcotics detective and a police officer accompanied the parole officers). According to the parole officer, Pena's response, when informed of their plan to search, was, "Okay. Sure. Come on in." The parole officers then proceeded to search Pena's house without a warrant. During the search, one of the parole officers removed from the floor vent an aluminum foil packet containing cocaine.

At the suppression hearing, Pena argued that the August 5th search violated his fourth amendment rights because it was conducted without a warrant and without his consent.[7] The trial court ruled there

---

7. Wyo. Const. art. 1, § 4, mandates:
The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not

be violated, and no warrants shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

was consent and denied Pena's motion to suppress.

The trial court coupled Pena's invitation to the parole officers to enter his house, with the fact that Pena, as one of the conditions for his parole, had signed a "Parole Agreement and Parole Grant" (Agreement),[8] to find that Pena had consented to the search. Pena's parole officer testified at the suppression hearing that the Agreement granted the parole officers the "authority" to conduct a warrantless search of Pena's house. The state's argument is that Pena, through his signature on the parole agreement, agreed that his house was subject to a search "at any time." We agree that Pena's status as a parolee permits parole officers to conduct warrantless

searches of his home.[9] Pena, however, is still entitled to the fourth amendment mandate that searches be "reasonable." [10]

In other words, a warrant based upon probable cause is not generally required before a parole officer may conduct a search to determine whether the parolee is violating the terms of his parole. *State v. Velasquez*, 672 P.2d 1254, 1260 (Utah 1983). This does not mean, however, that individuals who have signed a parole agreement, providing for warrantless searches, relinquish their fourth amendment right to be free from unreasonable searches.[11]

The Utah Supreme Court treats a parolee's signature on a parole agreement which permits warrantless searches as an acknowledgment that parole officers have

---

The Fourth Amendment to the United States Constitution, likewise, mandates:
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**8.** One of the provisions set forth in the parole agreement provides, inter alia, that Pena "shall abstain from the use of controlled substances [and] shall submit to searches of [his] residence * * *."
> W.S. 7-13-402(c) (June 1987 Repl.), provides: "In granting a parole the board [State Board of Parole] shall fix terms and conditions it deems proper to govern the conduct of the parolee while the parole is in effect. The terms and conditions may be special in each case or they may be prescribed by general rules and regulations of the board, or both." W.S. 7-13-402(e) goes on to provide that "[t]he board may adopt reasonable rules and regulations necessary to carry out the provisions of W.S. 7-13-401 through 7-13-421 including rules relating to: * * * (ii) The general conditions under which parole may be granted and revoked; * * * (iv) The duties of probation and parole agents."
> The State Board of Parole has promulgated various rules pursuant to the above statutory grant of authority. However, it has not promulgated any rules to govern parole officers in their searches of parolees. See Chapter V, § 6 *Conditions* (for parole).

**9.** A parolee's fourth amendment "rights are affected and modified by the necessary power that the state must have * * * to administer successfully the parole system as a controlled passageway between prison and freedom." *State v.*

*Velasquez*, 672 P.2d 1254, 1258 (Utah 1983) (citation omitted).

**10.** We read *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), to stand for the proposition that the fourth amendment limits parole officers to reasonable searches of parolees' homes.
> In *Griffin*, the Court ruled that a state regulation, which required warrantless searches of a probationer's home be conducted only upon "reasonable grounds," satisfied the fourth amendment. *Id.*, 483 U.S. at 880, 107 S.Ct. at 3171, 97 L.Ed.2d at 722. The Court upheld the search only after it had determined that the regulation it was conducted under satisfied the fourth amendment requirement that all searches be reasonable. The Court underscored this point when it prefaced its analysis with the statement that "[a] probationer's home, like anyone else's, is protected by the fourth amendment's requirement that searches be 'reasonable.'" *Id.*, 483 U.S. at 873, 107 S.Ct. at 3167, 97 L.Ed.2d at 717. What is reasonable depends upon a balancing of the parties' respective interests. Thus for a warrantless search to be upheld, it must be reasonable under the circumstances. It also cited *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), for the proposition that probationers, such as Griffin, and parolees share the same fourth amendment protection. *Griffin*, 483 U.S. at 874, 107 S.Ct. at 3168, 97 L.Ed.2d at 718.
> The "reasonableness" requirement of the fourth amendment, therefore, provides the constitutional floor for our review of warrantless searches of individuals who are on parole.

**11.** As noted in footnote 9, the Wyoming parole regulations are silent as to what constitutes "reasonable grounds" for parole officers to search a parolee.

the right to conduct *reasonable* searches. *Velasquez,* 672 P.2d at 1260 n. 4. We adopt this view.

The Utah Court has also struck the appropriate balance between the competing interests of the state and the parolee vis-a-vis reasonable searches. The Utah Court does not require that a search warrant based upon probable cause be obtained before a parolee may be searched. It does, however, require evidence: "(1) that the parole officer [had] a reasonable suspicion that the parolee has committed a parole violation or crime, and (2) that the search [was] reasonably related to the parole officer's duty." *State v. Johnson,* 748 P.2d 1069, 1072 (Utah 1987) (citing *Velasquez,* 672 P.2d at 1260.). *See also People v. Anderson,* 189 Colo. 34, 536 P.2d 302, 305 (1975). Reasonable suspicion (which is a less stringent standard than probable cause) requires that the parole officer "be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant a belief * * * that a condition of parole has been or is being violated." *Johnson,* 748 P.2d at 1072.

This approach will provide the flexibility the state needs to operate its parole system. It will also provide a check against possible state encroachment upon a parolee's fourth amendment right to be free from unreasonable searches.[12]

■■■■ Whether the parole officers' search of Pena was reasonable need not be resolved, given that we find his statement, "Okay. Sure. Come on in," evinced his consent to the search of his house. *Amin v. State,* 695 P.2d 1021, 1024–25 (Wyo. 1985). An individual may consent to a warrantless search and thereby waive the fourth amendment warrant requirement. *Stamper v. State,* 662 P.2d 82, 86 (Wyo. 1983). Whether consent to a search was voluntary is a question of fact to be determined in light of all the circumstances of

the case. *Amin,* 695 P.2d at 1024–25. Viewing the evidence in the light most favorable to the prevailing party, *Wilde v. State,* 706 P.2d 251, 256 (Wyo.1985), we uphold the trial court's ruling that Pena consented to the August 5th search of his house.

Finally, Pena seeks a reversal of his conviction based upon cumulative error. Other than the testimony about Pena's cowboy boots, which was harmless, we find no error. *See Justice,* 775 P.2d at 1010–11. Pena's conviction is affirmed.

both the individual and the state have in a parole system that can operate to fulfill its objectives.
*Velasquez,* 672 P.2d at 1263.

---

12. In short, our ruling should not be interpreted as a denigration of the importance of the Fourth Amendment's protection against unreasonable searches and seizures, but an accommodation of that right to the interests that