2005 WY 165

**The STATE of Wyoming, Petitioner,**

**v.**

**Colin McAULIFFE, Respondent.**

**No. 04–65.**

Supreme Court of Wyoming.

Dec. 29, 2005.

Representing Petitioner: Patrick J. Crank, Wyoming Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Paul S. Rehurek, Deputy Attorney General. Argument by Mr. Rehurek.

Representing Respondent: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Thomas L. Lee, Special Assistant Public Defender. Argument by Mr. Lee.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, JJ., and STEBNER, D.J., Retired.

GOLDEN, Justice.

[¶ 1] This case comes before this Court on the State's "Petition for Writ of Review/Certiorari." The State seeks review of the district court's order granting Colin McAuliffe's (McAuliffe) motion to suppress evidence of his commission of several drug related crimes which was seized when law enforcement personnel were booking him on his arrest that had occurred earlier that day at the scene of a traffic stop. The district court suppressed the evidence because it found that the arrest leading to the discovery of the drug evidence violated the Fourth Amendment. Finding that the district court erred in its ruling, we reverse and remand for further proceedings.

## ISSUE[1]

[¶ 2] The question presented is:

Did the district court err in holding that *Jones v. State*, 2002 WY 35, 41 P.3d 1247 (Wyo.2002), does not permit random searches of the person, vehicle or residence for drugs as a condition of probation for convicted drug defendants?

## FACTS

[¶ 3] On May 1, 2003, McAuliffe entered a guilty plea to misdemeanor possession of a controlled substance in the Laramie County Circuit Court and was sentenced to a suspended jail term and one year of unsupervised probation. The circuit court imposed the following conditions as part of McAuliffe's probation (emphasis in original):

The defendant is not to use or possess any alcohol or controlled substances or be around anyone who does. The defendant is to submit to searches of his person, vehicle or residence at the request of law enforcement for controlled substances or any drug paraphernalia, or alcohol.

Effective 6–16–03 [defendant] is allowed to move out of state. If [defendant] is in Laramie Co. *for any reason*, he must do chemical testing. If law enforcement makes contact with [defendant] in Laramie Co.[,] the [defendant] will be required to immediately provide a UA sample. Failure to do so will result in [defendant's] immediate arrest.

[¶ 4] On December 30, 2003, while on routine patrol, Detectives Moon and Murray of the Cheyenne Police Department saw McAuliffe's vehicle exit the Walgreen's parking lot on East Lincolnway. After observing McAuliffe make two turns without using turn signals, the detectives stopped McAuliffe for the traffic violations. During the traffic stop, the detectives spoke with the clerk of the circuit court and confirmed that McAuliffe was still on probation and subject to the search conditions contained in the probation order. The detectives asked McAuliffe about his probation status and requested that he submit to a search of his person and vehicle. McAuliffe denied that he was still on probation and refused to consent to the search. The detectives arrested McAuliffe for interference[2] for refusing to consent to the search.

[¶ 5] McAuliffe was then transported to jail. Before entering the facility, and after being warned about bringing contraband into the jail, McAuliffe produced a large·amount of cash and a loaded methamphetamine pipe from his clothing. Later, while in the booking area, McAuliffe attempted to pass a small bag of methamphetamine to a female who

---

1. This is the "controlling question of law" we agreed to answer when we granted the State's Petition for Writ of Review/Certiorari.

2. While there seemed to be some confusion on the issue, the district court found, as a matter of fact, that McAuliffe was arrested for interference. Neither party argues that this finding is clearly erroneous.

was leaving the facility. She refused to take it and notified jail personnel of the incident. A subsequent search of McAuliffe's person revealed the bag of methamphetamine.

[¶ 6] McAuliffe was charged with attempted delivery of methamphetamine, a felony, in violation of Wyo. Stat. Ann. § 35-7-1031(a)(i) (LexisNexis 2005) and Wyo. Stat. Ann. § 6-1-301(a) (LexisNexis 2005), taking a controlled substance into a jail, a felony, in violation of Wyo. Stat. Ann. § 6-5-208 (LexisNexis 2005), and misdemeanor possession of methamphetamine, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(i)(C) (LexisNexis 2005). McAuliffe filed a motion to suppress the drug evidence, claiming the probation condition authorizing random searches of his person and vehicle and his arrest for refusing to comply with that probation condition violated his federal and state constitutional rights. The State opposed the motion, alleging that a probation condition providing for random searches is constitutionally permissible pursuant to *Jones v. State*, 2002 WY 35, 41 P.3d 1247 (Wyo.2002).

[¶ 7] Following an evidentiary hearing, the district court granted McAuliffe's motion to suppress. The district court ruled McAuliffe's probation condition allowing random, suspicionless searches for drugs violated the Fourth Amendment, and the detectives had no authority to arrest McAuliffe for interference based on his violation of that probation condition. The State seeks review of the district court's ruling.

## STANDARD OF REVIEW

[¶ 8] This Court recently reiterated the standard for reviewing a trial court's ruling on a motion to suppress:

In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly errone-

ous. *Gehnert v. State*, 956 P.2d 359, 361 (Wyo.1998). We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess "the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions." *Id.* The constitutionality of a particular search or seizure is, however, a question of law that we review de novo. *Id.; Jones v. State*, 902 P.2d 686, 690 (Wyo.1995).

*Lindsay v. State*, 2005 WY 34, ¶ 12, 108 P.3d 852, 855 (Wyo.2005) (quoting *Martindale v. State*, 2001 WY 52, ¶ 9, 24 P.3d 1138, 1140–41 (Wyo.2001); *Putnam v. State*, 995 P.2d 632, 635 (Wyo.2000)).

## DISCUSSION

[¶ 9] The district court ultimately found that McAuliffe's arrest was unlawful and suppressed the drug evidence discovered incident to that arrest. The pivotal underlying issue is whether appropriate legal grounds existed to support McAuliffe's arrest. Under the facts of this case, the legality of the arrest depends on whether the probation condition requiring McAuliffe to submit to random searches was permissible under the Fourth Amendment to the United States Constitution.[3] If the probation condition is constitutional, then McAuliffe, by refusing to consent to the search, arguably knowingly obstructed, impeded or interfered with the detectives in the lawful performance of their official duties—enforcing the probation provision contained in the circuit court's judgment and sentence. Wyo. Stat. Ann. § 6-5-204(a) (LexisNexis 2005).[4]

[¶ 10] The probation conditions to which McAuliffe was subject expressly provided he was "to submit to searches of his person, vehicle or residence at the request of law enforcement for controlled substances" and

---

3. Neither party challenged the propriety of the search and McAuliffe's arrest on independent state constitutional grounds. Therefore, our analysis is limited to federal constitutional principles. *See Mackrill v. State*, 2004 WY 129, ¶ 13, 100 P.3d 361, 364–65 (Wyo.2004); *Vassar v. State*, 2004 WY 125, ¶ 14, 99 P.3d 987, 993 (Wyo.2004).

4. Wyo. Stat. Ann. § 6-5-204(a) provides:
    A person commits a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both, if he knowingly obstructs, impedes or interferes with or resists arrest by a peace officer while engaged in the lawful performance of his official duties.

"[i]f law enforcement makes contact with [him] in Laramie County, [he] will be required to immediately provide a UA sample. Failure to do so will result in [his] immediate arrest." With these probation conditions, the circuit court gave law enforcement (the detectives) the legal authority to randomly search McAuliffe for drugs as part of their official duties. The State and McAuliffe argue over whether the legal authority—the probation conditions—violates the reasonableness requirement of the Fourth Amendment. At the heart of this argument are this Court's decisions in *Jones v. State*, 2002 WY 35, 41 P.3d 1247 (Wyo.2002), *Nixon v. State*, 2001 WY 15, 18 P.3d 631 (Wyo.2001), and *Pena v. State*, 792 P.2d 1352 (Wyo.1990).

[¶ 11] In *Pena*, one of the issues raised was whether the trial court erred in allowing evidence that parole agents had seized without a search warrant. *Pena*, 792 P.2d at 1354. Pena was on parole for a previous drug conviction and had signed a parole agreement providing he was to abstain from drug use and to submit to warrantless searches of his residence. *Id.* at 1357. Acting on an anonymous tip that Pena possessed cocaine, four parole officers went to Pena's residence and told him they were going to search it. Pena said, "Okay. Sure. Come on in." *Id.* at 1356. During a search of the residence, one of the parole officers found a packet of cocaine in the floor vent. *Id.* After his arrest for several drug crimes, Pena moved to suppress the cocaine, arguing the search was conducted without a warrant and without his consent. *Id.* Coupling Pena's invitation, "Okay. Sure. Come on in," with Pena's having signed the parole agreement, the trial court ruled Pena had consented to the search. *Id.* at 1357.

[¶ 12] On appeal of that ruling, this Court reviewed both the consent issue and the issue whether a warrantless search is subject to a Fourth Amendment reasonableness requirement. It is true that in our "reasonableness requirement" discussion we said we adopted the view of the Utah Supreme Court in *State v. Velasquez*, 672 P.2d 1254, 1260 (Utah 1983), that before a parole officer searches a parolee he or she must have a reasonable suspicion that the parolee has committed a

parole violation or crime, and that the search must be reasonably related to the parole officer's duty. *Pena*, 792 P.2d at 1357–58. However, we stated that we did not need to resolve the reasonableness of the parole officers' search of Pena's residence because we held that Pena's statement, "Okay. Sure. Come on in," evinced his voluntary consent to the search of his residence. *Id.* at 1358. Because the affirmance in *Pena* was on the sole ground of consent, the discussion of the "reasonableness requirement" was purely dictum.

[¶ 13] In *Nixon*, this Court reviewed warrantless searches of a probationer's residence and of his person. Nixon, a Colorado probationer under the supervision of the Wyoming Department of Probation and Parole, was subject to a probation condition that he submit his person and residence to search and seizure at any time, with or without a search warrant, whenever reasonable cause is determined by a probation officer. *Nixon*, ¶ 3, 18 P.3d at 633. In a routine visit to Nixon's residence, two probation officers saw in plain view items indicating possible drug or alcohol use in violation of Nixon's probation conditions. *Id.* at ¶ 4, 18 P.3d at 633. After the probation officers left Nixon's residence, they obtained their supervisor's permission to search it, arranged for two sheriff's deputies to accompany them to Nixon's residence, and returned to that residence, where a search revealed items indicative of possible illegal drug activity. *Id.* After leaving Nixon's residence upon completion of their search, the probation officers decided to conduct a second search of the residence. The probation officers and several agents of the Wyoming Division of Criminal Investigation (DCI) returned to Nixon's residence. Outside the residence, the probation officers told Nixon they were going to search his residence again with the assistance of the DCI agents. *Id.* at ¶¶ 5–6, 18 P.3d at 633–34. Nixon consented to a search of his residence and to a search of his person by the DCI agents. *Id.* at ¶ 6, 18 P.3d at 634. The search of Nixon's person uncovered twenty-two grams of cocaine. *Id.*

[¶ 14] In response to the drug charge based on the cocaine seized from his person, Nixon moved to suppress that evidence. *Id.*

at ¶ 7, 18 P.3d at 634. Denying Nixon's motion, the trial court ruled that his consent to the search of his person was voluntary and that the probation officers had reasonable suspicion to search Nixon's person based on the previous discovery of items in his residence indicative of drug and alcohol use in violation of his probation conditions. *Id.* On appeal, Nixon raised not only the voluntary consent issue, but also the propriety of the second search of his residence, which had not been raised in the trial court. *Id.* at ¶¶ 9–10, 18 P.3d at 634.

[¶ 15]  This Court easily affirmed the voluntary consent issue. *Id.* at ¶¶ 17–18, 18 P.3d at 636–37. As for the propriety of the second search of Nixon's residence, in light of the probation condition requirement of reasonable cause of a probation violation, this Court easily found that the probation officers' plain view discovery of items during the routine residence visit indicating a possible probation violation and the officers' observation of drug-related items during the first search of the residence provided reasonable cause for the probation officers to conduct the second search of the residence. *Id.* at ¶ 13, 18 P.3d at 636. Clearly, *Nixon* offers no guidance in the resolution of the issue presented in the instant case.

[¶ 16]  We now turn to *Jones.* Having been convicted of driving while under the influence causing serious bodily injury (DWUI), Jones received a sentence that included, among other things, three years of supervised probation which specified numerous conditions, one of which was that he submit to a search of his person, vehicle or residence at any time, day or night, upon the request of his probation agent. *Jones,* ¶ 6, 41 P.3d at 1251. This Court granted a writ of review to answer several questions raised by his petition, including the constitutionality of a probation condition that allows searches at any time upon a probation officer's request. *Id.* at ¶ 32, 41 P.3d at 1257.

[¶ 17]  In its analysis of this question, this Court recognized that the "[d]etermination of the reasonableness of such a provision requires a balancing of the interests of the state and the privacy interests of the probationer." *Id.* at ¶ 36, 41 P.3d at 1258. More-over, this Court recognized that the sentencing judge must, when imposing reasonable probation conditions, take into consideration on a case-by-case basis the nature and circumstances of the offense and the probationer's history and characteristics. *Id.* at ¶ 37, 41 P.3d at 1258. This Court determined that a probation condition unlimited as to time and scope was unreasonable. *Id.* at ¶ 38, 41 P.3d at 1258. However, this Court said that, because Jones had been convicted of DWUI causing serious bodily injury, a crime involving alcohol consumption, a probation condition would be reasonable that required the probationer to submit to random searches for the presence of alcohol. *Id.* This Court stated its holding to include:

> [I]n cases where the unlawful possession, consumption or abuse of alcohol or a controlled substance was an element or contributing factor in the underlying crime, . . . reasonable grounds exist to include as a probationary condition random searches of the defendant, his residence, and his vehicle for the presence of the offending substance.

*Id.* at ¶ 39, 41 P.3d at 1258.

[¶ 18]  Obviously, that holding went "beyond the reach of *Nixon* and *Pena,*" as this Court declared on the way to arriving at that holding. *Id.* at ¶ 35, 41 P.3d at 1257. *Nixon* and *Pena,* as noted earlier in this opinion, did not involve random searches and are clearly distinguishable from *Jones,* which did. In *Pena,* this Court's narrow holding was that Pena's consent to a search was voluntary; in *Nixon,* this Court's narrow holdings were simply that Nixon voluntarily consented to a search of his person and that reasonable cause existed to conduct the second search of Nixon's residence.

[¶ 19]  This Court's order granting the writ of review in this case referred to *United States v. Knights,* 534 U.S. 112, 120 n. 6, 122 S.Ct. 587, 592 n. 6, 151 L.Ed.2d 497 (2001). In that case, the Supreme Court had before it a California probation condition requiring a probationer to submit his person, property, residence, vehicle and personal effects to search at any time, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law en-

forcement officer. *Id.* at 114, 122 S.Ct. at 589. Knights, the probationer, conceded that the law enforcement officer's search of his apartment, which uncovered incriminating evidence, was supported by reasonable suspicion. *Id.* at 122, 122 S.Ct. at 593. Knights' challenge to the search was simply whether the Fourth Amendment limits searches pursuant to that California probation condition to those searches with a "probationary" purpose, because the search of his apartment was for "investigatory" purposes. *Id.* at 116, 122 S.Ct. at 590. Employing its general Fourth Amendment analysis of examining the totality of the circumstances in order to determine "reasonableness," the Court held that the Fourth Amendment did not limit searches pursuant to that probation condition to those with a "probationary" purpose; therefore, law enforcement searches for "investigatory" purposes pursuant to that probation condition were reasonable under the Fourth Amendment. *Id.* at 118–22, 122 S.Ct. at 591–93.

[¶ 20]  Two aspects of *Knights* are important for purposes of deciding the issue before us today. One is that the Supreme Court, while recognizing that the language of the probation condition before it permitted a search by a law enforcement officer without any individualized suspicion, expressly stated it did not need to address the question whether such a probation condition "so diminished or completely eliminated" a probationer's reasonable expectation of privacy that a law enforcement officer's suspicionless search would have satisfied the Fourth Amendment's "reasonableness" requirement. *Id.* at 120 n. 6, 122 S.Ct. at 592 n. 6. Knight's concession that the investigatory search was supported by reasonable suspicion eliminated that need. That unaddressed question is before us today. The other aspect of *Knights* that is important for purposes of deciding the issue before us is the Court's employment of its general Fourth Amendment analysis of examining the totality of the circumstances "with the probation search condition being a salient circumstance." *Id.* at 118, 122 S.Ct. at 591.

[¶ 21]  Comparing the features of the general Fourth Amendment analysis employed in *Knights* with the features of the Fourth Amendment analysis this Court employed in *Jones,* one is struck by the similarity of those features: (1) courts determine "reasonableness" by examining the totality of the circumstances with the probation search being a salient circumstance and by balancing, on the one hand, the degree to which the search intrudes upon an individual's privacy and, on the other hand, the degree to which the search is needed for the promotion of legitimate governmental interests; (2) courts recognize that probation is a form of criminal sanction and a probationer does not enjoy the liberty to which law-abiding citizens are entitled; and a sentencing court granting probation may impose reasonable conditions that deprive the probationer of some privacy expectations; (3) courts recognize that it is reasonable for a sentencing court to conclude that a probation search condition would further the two primary goals of probation—the probationer's rehabilitation and society's protection from future criminal violations; and (4) the sentencing court must consider, on a case-by-case basis, the nature and circumstances of the probationer's crime and the probationer's history and characteristics as those factors will inform the selection of reasonable probation conditions.

[¶ 22]  These same features of general Fourth Amendment analysis were employed by the Utah Supreme Court when it affirmed a juvenile court's ruling that, in light of the express terms of his probation, a juvenile had no reasonable expectation of privacy in his backpack and contraband found therein. *State ex rel. ACC,* 2002 UT 22, ¶ 21, 44 P.3d 708, 712 (Utah 2002). In that case, the juvenile was on probation for marijuana possession and subject to conditions that he submit to law enforcement searches for detection of drugs and to chemical testing for controlled substances. *Id.* at ¶¶ 1, 3, 44 P.3d at 709. A probation officer searched the juvenile's backpack, seized a device used to inhale marijuana, and filed a delinquency charge against the juvenile. *Id.* at ¶¶ 1, 8–9, 44 P.3d at 709–10. It is noteworthy that in 1983 the Utah court decided *State v. Velasquez,* 672 P.2d 1254, which this Court discussed in *Pena.* It is also noteworthy that the Utah court in *ACC* limited its holding to the facts

in that case and made "no pronouncement regarding whether a *police officer* could have relied upon the terms of ACC's probation to conduct a warrantless search in the absence of a 'reasonable suspicion.'" *ACC,* ¶ 21 n. 5, 44 P.3d at 713 n. 5 (emphasis in original).

[¶ 23] The Fourth Amendment analyses in *Jones, Knights* and *ACC* can be usefully applied in McAuliffe's case. The circuit court that sentenced McAuliffe to probation was familiar with the nature and circumstances of the drug crime committed by him and his drug history and characteristics. It knew of the permissible punishment it could impose on him, ranging from confinement to probation. Had the court placed him in confinement, McAuliffe's freedom and civil liberties would have been constitutionally severely restricted and he would not have possessed any reasonable expectation of privacy. The circuit court knew that if it placed him on probation, it could impose reasonable conditions that would deprive him of some expectations of privacy and freedoms enjoyed by law-abiding citizens. Considering that drugs were a factor in McAuliffe's crime and previous criminal history, the court could reasonably conclude that probation conditions requiring McAuliffe to submit to random searches and chemical testing for drugs were reasonable to further McAuliffe's rehabilitation, on the one hand, and society's protections from future criminal drug violations on the other. McAuliffe's probation order clearly expressed the search and chemical testing conditions and McAuliffe knew of those conditions. Because the circuit court could have constitutionally deprived McAuliffe of any reasonable expectation of privacy had it ordered confinement, common sense demands that the court is constitutionally permitted to impose that same deprivation while ordering a lesser punishment like probation as long as that deprivation bears a reasonable relationship to the probationer's criminal activity, the probationer's rehabilitation, and society's protection from future criminal drug violations. Thus, we find that the probation search conditions permitting random drug searches of probationer McAuliffe by law enforcement officers pass Fourth Amendment muster.

[¶ 24] In light of the foregoing analysis, we hold that the district court erred in ruling that, given McAuliffe's probation search conditions, *Jones* did not permit law enforcement detectives to conduct a random search for drugs of McAuliffe's person and vehicle at the scene of the traffic stop. We further hold that the circuit court's probation order, with the attendant reasonable search conditions, authorized the detectives as part of their official duties to question McAuliffe about his probation status and to conduct a random search for drugs on his person and in his vehicle; that the detectives were lawfully performing their official duties when they contacted McAuliffe at the scene of the traffic stop and questioned him; and that McAuliffe's statement to the detectives that he was not consenting to the random search, as well as his false statement to the detectives that he was not on probation, gave the detectives probable cause to arrest him for knowingly obstructing, impeding or interfering with peace officers while engaged in the lawful performance of their official duties in violation of Wyo. Stat. Ann. § 6–5–204(a) (LexisNexis 2005). Wyo. Stat. Ann. § 7–2–102(b)(i) (LexisNexis 2005) (peace officer may arrest person without a warrant when any criminal offense is being committed in the officer's presence by the person to be arrested); *Brown v. State,* 2005 WY 37, ¶¶ 19–21, 109 P.3d 52, 57–58 (Wyo.2005); *Newton v. State,* 698 P.2d 1149, 1150–51 (Wyo.1985); *Tillett v. State,* 637 P.2d 261, 264–65 (Wyo.1981); and see *Jandro v. State,* 781 P.2d 512, 517–19 (Wyo.1989) (the facts and circumstances within the officer's knowledge need not rise to the level of proving guilt or even to the level of prima facie evidence of guilt for probable cause for an arrest to arise).

## CONCLUSION

[¶ 25] The order of the district court granting McAuliffe's motion to suppress is reversed and this matter is remanded for such further proceedings as may be appropriate.

VOIGT, Justice, specially concurring, in which KITE, Justice, joins.

[¶ 26] I write separately because, although I agree with the majority that the

district court's order must be reversed, and I agree with the majority's *Jones v. State*, 2002 WY 35, 41 P.3d 1247 (Wyo.2002), rationale, I am not convinced that the appellee's conduct constituted interference with a peace officer. It is true that the appellee first told the officers that he was not on probation. Nevertheless, they proceeded to search him pursuant to the probation condition that allowed random searches for controlled substances. It is also true that, during the search, the appellee said, in effect, "I don't consent to this search." Those two statements did not constitute interference with a peace officer because they did not hinder for one second the officers' pursuit of their duties. However, had the officers not arrested him, but continued the search instead, which they had every right to do, they would have found the drugs on his person and he then would have been arrested for that offense. *Ingersoll v. State*, 2004 WY 102, ¶ 24, 96 P.3d 1046, 1053 (Wyo.2004); *Nix v. Williams*, 467 U.S. 431, 449–50, 104 S.Ct. 2501, 2512, 81 L.Ed.2d 377 (1984), *cert. denied* 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985).

STEBNER, District Judge, Retired, dissenting.

[¶ 27] I respectfully dissent. In *United States v. Knights*, 534 U.S. 112, 120 n. 6, 122 S.Ct. 587, 592 n. 6, 151 L.Ed.2d 497 (2001), the Supreme Court stated:

> We do not decide whether the probation condition so diminished, or completely eliminated, Knights' reasonable expectation of privacy ... that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment. The terms of the probation condition permit such a search, but we need not address the constitutionality of a suspicionless search because the search in this case was supported by reasonable suspicion.

Although I agree with the majority that this unaddressed question is before us today, I disagree with the conclusions the majority draws from *Knights*. *See* majority opinion, ¶¶ 19–21. Indeed, the Supreme Court also stated:

> We hold that the balance of these considerations requires **no more than reasonable suspicion** to conduct a search of this probationer's house. The **degree of individualized suspicion** required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable. Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term "probable cause," **a lesser degree** satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable. Those interests warrant a **lesser than probable-cause standard** here.

*Knights*, 534 U.S. at 121, 122 S.Ct. at 592–93 (emphasis added, internal citations omitted). The Supreme Court's references to a lesser standard and its repeated notation that the search in *Knights* was supported by reasonable suspicion leads me to conclude that although probable cause is not required, some quantum of individualized suspicion is nevertheless still necessary. *See Knights*, 534 U.S. at 121–22, 122 S.Ct. at 592–93.

[¶ 28] Additionally, I would mention that I agree with Justice Voigt that McAuliffe's conduct did not constitute interference with a peace officer. However, I do not agree that the officers would have eventually found the drugs on his person. The officers did not have a warrant or probable cause to search McAuliffe. Instead, they were relying on the probation condition which required McAuliffe to consent to the search. Thus, when he refused to consent to the search, the officers should have initiated the process for revoking McAuliffe's probation by informing the attorney for the state of the facts that establish a probation violation as provided by W.R.Cr.P. 39.